[No. 14444-1-II. Division Two. August 30, 1993.]

THE STATE OF WASHINGTON, *Petitioner*, v. DAVID THORP, *Respondent.*

*H. Steward Menefee, Prosecuting Attorney,* and *Gerald R. Fuller, Deputy,* for petitioner.

*Stephen James Hyde,* for respondent (appointed counsel for appeal).

MORGAN, J. — The State obtained discretionary review of an order suppressing evidence. We affirm.

On November 9, 1989, a Grays Harbor deputy sheriff observed a flatbed truck loaded with cedar blocks traveling north on a county road. He stopped the truck in order to ascertain whether its driver, who turned out to be David Thorp, had a specialized forest products permit. Interrogation disclosed that Thorp had no such permit, but that he did have a valid driver's license. Checking the license through dispatch, the deputy discovered a misdemeanor warrant for Thorp's arrest. After placing Thorp under arrest, the deputy searched his person and found marijuana.

Thorp was charged in district court with possession of less than 40 grams of marijuana, in violation of RCW 69.50-.401(e). He moved to suppress all evidence obtained as a result of the stop of his truck. The district court ruled the stop unconstitutional and granted his motion to suppress.

The State appealed to superior court. It did not contend that the deputy had probable cause or articulable suspicion. Rather, it argued that even if the deputy lacked probable cause and articulable suspicion, he was authorized to stop the truck for the purpose of checking whether the driver had a specialized forest products permit.[1] The Superior Court ruled the stop was invalid. The State then moved for discretionary review, and its motion was granted by a commissioner of this court.

In this court, the State again does not contend that the deputy had probable cause or articulable suspicion. Rather, it claims that the deputy had the authority to stop Thorp's vehicle, without probable cause or articulable suspicion, for the purpose of questioning Thorp and ascertaining whether he had a specialized forest products permit.

We analyze the State's position by addressing two questions. (1) What principles govern, and (2) did the stop violate those principles?

---

[1] In part, the State argued: "Peace officers need the authority to stop vehicles transporting cedar products in order to check whether the operators are complying with this ordinance. Here, the deputies only stopped the vehicle to determine whether the driver possessed the necessary permits. Upon producing the necessary permits, the driver would have been free to go on his way." Clerk's Papers, at 10.

## I

According to the State, the stop is governed not by the Fourth Amendment principles that govern traffic stops, but by the Fourth Amendment principles that govern "pervasively regulated" industries. Relying on *United States v. Biswell*, 406 U.S. 311, 32 L. Ed. 2d 87, 92 S. Ct. 1593 (1972) (pawnshop licensed to sell firearms); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 25 L. Ed. 2d 60, 90 S. Ct. 774 (1970) (catering business licensed to sell alcohol); and *Washington Massage Found. v. Nelson,* 87 Wn.2d 948, 558 P.2d 231 (1976) (massage business), it says that "[t]he forest products industry is one which is the subject of extensive governmental regulations", and that "[a] warrant is not required to search premises where such extensively regulated activity is carried out."

■■ The State's argument fails because the record does not show that the forest products industry is pervasively regulated within the meaning of *Biswell* and *Colonnade*. A pervasively regulated industry is one with "a long tradition of close government supervision" and "such a history of government oversight that no reasonable expectation of privacy . . . could exist for a proprietor over the stock of such an enterprise." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313, 56 L. Ed. 2d 305, 98 S. Ct. 1816 (1978). Persons voluntarily engaging in the industry implicitly consent to government intrusion and therefore have a diminished expectation of privacy. *Marshall v. Barlow's, Inc.*, 436 U.S. at 313 (entrepreneur in pervasively regulated industry "has voluntarily chosen to subject himself to a full arsenal of governmental regulation"); *United States v. Munoz*, 701 F.2d 1293, 1299 (9th Cir. 1983) (cases involving pervasively regulated industries "premise the relaxation of traditional Fourth Amendment requirements on a consent implicit in a businessman's participation in a regulated industry"). Nothing in the record here indicates in any way that the forest products industry has the sort of tradition or history that would make it a pervasively regulated industry.

■ Additionally, the State's argument fails because even if the forest products industry were pervasively regulated, the Fourth Amendment standards applicable to such industries would not allow the police to randomly stop a moving vehicle without probable cause or articulable suspicion. The effect of finding that an industry is pervasively regulated is to justify, on an implicit consent theory, governmental intrusion into a place of business, provided that the intrusion is reasonable in terms of time, place and scope. *United States v. Biswell, supra* (upholding warrantless search of pawnshop licensed to deal in firearms); *Colonnade Catering Corp. v. United States, supra* (upholding warrantless search of catering establishment licensed to deal in alcohol); *Washington Massage Found. v. Nelson, supra*. However, "The [United States] Supreme Court twice has rejected suggestions that this implicit consent theory justifies roving stops of motorists." *Munoz,* 701 F.2d at 1299.

Finally, the State's argument fails because the stop in this case was made in the course of regulating the general public, as opposed to regulating one particular industry. The State says the stop was made on the authority of RCW 76.48-.070(2)[2] and Grays Harbor Ordinance 23.[3] RCW 76.48.070(2),

---

[2] RCW 76.48.070(2) provides:
"It shall be unlawful for any person (a) to possess and/or (b) to transport within the state of Washington any cedar products or cedar salvage without having in his or her possession a specialized forest products permit or a true copy thereof evidencing his or her title to or authority to have possession of the materials being so possessed or transported."

[3] Grays Harbor Ordinance 23, § 7 provides in pertinent part:
    All peace officers shall note and investigate the transportation of . . . cedar products for the purpose of preventing violations of the provisions of this act. Grays Harbor Ordinance 23, § 8 provides in pertinent part:
    Any peace officer . . . shall have the power to stop, inspect and search without a warrant any person or vehicle observed transporting . . . five or more pounds of . . . cedar products for the purpose of ascertaining whether or not the same are being transported in violation of the provisions of this ordinance.
    Thorp argues that ordinance 23 is preempted by RCW 76.48, but we disagree. A local ordinance is preempted if it conflicts with a state statute, Const. art. 11, § 11, or encroaches into an area of law over which the state has asserted jurisdic-

provides that it shall be unlawful for *any person* to transport cedar products without a permit; thus, it regulates the general public, and not just the forest products industry. Ordinance 23 similarly provides that any peace officer shall have the power to stop, inspect and search without a warrant *any person or vehicle* observed transporting 5 or more pounds of cedar products; thus, it also regulates the general public, and not just the forest products industry. The State seems to assume that every person who transports cedar products is a member of the forest products industry, but nothing in the record supports that proposition.

For all of the foregoing reasons, we conclude that the stop in this case is not governed by Fourth Amendment standards applicable to pervasively regulated industries. Instead, the stop is governed by the Fourth Amendment principles that ordinarily apply to traffic stops.

## II

The fourth amendment to the United States Constitution prohibits an officer who has neither probable cause nor articulable suspicion from randomly stopping a moving vehicle for the purpose of questioning the occupants about whether they have permits or similar papers required by the government. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975); *Delaware v. Prouse*, 440 U.S. 648, 663, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979); *United States v. Munoz*, 701 F.2d at 1298. In *Brignoni-Ponce*, the United States Supreme Court held that border patrol officers on roving patrol, who had neither probable cause nor articulable suspicion, were constitutionally prohibited from randomly stopping a moving car in order to question its occupants about

---

tion and totally occupied the field. *Employco Personnel Servs., Inc. v. Seattle*, 117 Wn.2d 606, 617, 817 P.2d 1373 (1991); *Bellingham v. Schampera*, 57 Wn.2d 106, 109, 356 P.2d 292, 92 A.L.R.2d 192 (1960). Ordinance 23 and RCW 76.48 deal with the same subject in a consistent manner. Moreover, ordinance 23 was enacted 5 years before RCW 76.48, and the Legislature stated when it enacted RCW 76.48 that it did not intend to "repeal or modify any provision of existing law." RCW 76.48.910.

their citizenship and immigration status. 422 U.S. at 884. In *Prouse*, the United States Supreme Court held that a county patrolman, who had neither probable cause nor articulable suspicion, was prohibited from randomly stopping a moving car in order to question its driver about his driver's license and vehicle registration. 440 U.S. at 663. In *Munoz*, the United States Court of Appeals for the Ninth Circuit held that state game agents on roving patrol in the Mount Hood National Forest, who had neither probable cause nor articulable suspicion, were constitutionally prohibited from randomly stopping vehicles "to check for wood-cutting permits, to conduct a brief interview asking what park visitors had seen or done, and to check for possible game violations in the heavy game wintering area." (Footnotes omitted.) 701 F.2d at 1295.

Washington, of course, cannot require less than the Fourth Amendment. Thus, in *State v. Marchand*, 104 Wn.2d 434, 706 P.2d 225 (1985), two troopers set up a fixed checkpoint at which they stopped cars selected at random. The defendant's car was one of those stopped, and the troopers found marijuana. The State relied on a statute purporting to authorize state troopers to stop vehicles, without cause, so the driver's license and the vehicle's equipment could be checked. Applying *Prouse,* the Washington Supreme Court invalidated the stop on Fourth Amendment grounds. 104 Wn.2d at 439.

Additionally, the Washington Constitution provides greater protection than the Fourth Amendment requires. In *Seattle v. Mesiani*, 110 Wn.2d 454, 755 P.2d 775 (1988), the court held that article 1, section 7 of the Washington Constitution prohibited the police from establishing a fixed checkpoint at which every car was stopped, without probable cause or individualized suspicion, so the driver could be checked for sobriety. Two years later, the United States Supreme Court held that such a checkpoint was not prohibited by the Fourth Amendment. *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 455, 110 L. Ed. 2d 412, 110 S. Ct. 2481, 2488 (1990).

In this case, the stop of Thorp's vehicle was a roving stop made without probable cause or articulable suspicion. Thus,

it violated both the Fourth Amendment and the Washington Constitution. The State cannot successfully rely on ordinance 23 because that ordinance is unconstitutional to the extent it purports to authorize a roving stop of the kind made here. The trial court did not err when it granted Thorp's motion to suppress.

Affirmed.

ALEXANDER, C.J., and SEINFELD, J., concur.

Review denied at 123 Wn.2d 1009 (1994).