Regina H. HOLT, Appellee,

v.

The STATE of Texas, Appellant.

No. 599–93.

Court of Criminal Appeals of Texas, En Banc.

June 15, 1994.

Steven H. Swander, Fort Worth, for appellee.

Tim Curry, D.A. & Susan Ayers, Warren Spencer & Leslie Hardy, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellee was charged with driving while intoxicated ("DWI") after she was arrested at a sobriety checkpoint set up by the Arlington Police Department. Appellee filed a motion to suppress evidence seized through the sobriety checkpoint, alleging that the checkpoint violated her rights under the Fourth Amendment to the United States Constitution as well as Article I, Section 9 of the Texas Constitution. Specifically, appellee claimed that the lack of a legislatively-authorized, statewide administrative scheme makes sobriety checkpoints unreasonable and, therefore, unconstitutional in Texas. The trial court granted appellee's motion to suppress evidence. The State appealed, and the Fort Worth Court of Appeals reversed the trial court, holding that legislative authorization is not required for sobriety checkpoints in Texas. *State v. Holt,* 852 S.W.2d 47 (Tex.App.—Fort Worth 1993). We granted appellee's petition for discretionary review to determine whether "a suspicionless seizure at a sobriety checkpoint without a legislatively-authorized administrative scheme is prohibited by the Fourth Amendment to the United States Constitution ... or by Article I, Section 9 of the Texas Constitution." We will reverse.

A brief discussion of the facts surrounding this roadblock is necessary. In the early morning hours of May 25, 1991, the Arlington Police Department conducted a field sobriety checkpoint within the city limits of Arlington in the 1200 block of West Division. The evidence established that the checkpoint had been set up pursuant to written guidelines and procedures established in 1988 by a committee of police officers having supervisory authority within the Arlington Police Department. The Arlington City Council had previously granted policy-making authority to the Chief of Police, who approved such guidelines. The City Council did not consider these procedures. The location of the checkpoint at issue had been selected by the sergeant in the Traffic Division, who was the supervisor of the checkpoint, and had been approved by the Traffic Division Commander. The location was selected on the basis of several significant factors that were supported by research done by officers within the Traffic Division. This particular site had been determined to be tied for third in terms of the number of DWI arrests made at the location over a certain period of time. Findings of fact by the trial judge further indicate that the date and location of the checkpoint was distributed to the media, and a related story about the checkpoint had appeared in a local newspaper the morning of the checkpoint.

It was also established that the officers at the scene, under the supervision of the Traffic Division sergeant, posted warning signs, illuminated the roadside, and directed traffic into the funnel of the checkpoint. Over a three hour period, each and every one of the 341 automobiles that approached the location was stopped. A police officer would explain the purpose of the checkpoint to the driver and engage the driver in a brief conversation while looking for signs of intoxication. If no signs of intoxication were observed, the driver was allowed to pass. If signs of intoxication were detected, the driver was asked to move his vehicle to an isolated area where an officer would administer field sobriety tests. Each car was detained for an average of 10–15 seconds at the initial stop. During this roadblock, ten DWI arrests were made.[1]

---

1. Although the specific facts of appellee's arrest are not germane to the disposal of this matter, we will briefly detail them here to demonstrate why they do not bear on the outcome. Appellee's automobile was seen by a civilian observer of the checkpoint as it approached the checkpoint. The civilian witness claimed that the vehicle made an erratic stop, far back from where the actual checkpoint procedures were being carried out, and the witness stated that the driver and the passenger exchanged places in the vehi-

cle before continuing on towards the roadblock. After receiving this information from the civilian, one police officer directed the vehicle away from the stop-point, and it was determined that the passenger, here the appellee, was intoxicated. Although the witnessing of the switch by the two persons inside the vehicle may give rise to independent reasonable suspicion in certain circumstances, this is not the case here. Nothing suspicious was observed by any police officer at the

The constitutionality of DWI roadblocks is an issue that has been gaining legal attention over the course of the past ten years. The Fourth Amendment to the United States Constitution prohibits all searches and seizures that are unreasonable. It is unquestionable that a Fourth Amendment seizure occurs when a vehicle is stopped at a roadside checkpoint. *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). The United States Supreme Court has declared that such a suspicionless search and seizure is reasonable under the Fourth Amendment, when it has met the balancing test established in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

■ In a DWI roadblock situation, the *Brown* test involves a balancing of the public interest in the roadblock against the individual's right to privacy in light of three factors: (1) the state's interest in preventing accidents caused by drunk drivers; (2) the effectiveness of the DWI roadblock in preventing such accidents; and (3) the level of the intrusion on an individual's right to privacy that is caused by the roadblock. In addition to *Brown*, the U.S. Supreme Court has handed down the landmark decision of *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), analyzing DWI roadblocks under the *Brown* test. The issue we are truly faced with in the instant case is whether, in light of *Sitz*, DWI roadblocks are constitutional without express authorization and implementation by a statewide governing body. We hold here that *Sitz* does so require.

■ Much debate is given to language in *Sitz* stating that "*Brown* was not meant to transfer from politically accountable officials to the courts the decision as to which among reasonable alternative law enforcement techniques should be employed" in creating a DWI roadblock. *Id.*, at 453, 110 S.Ct. at 2487. The Court held that the choice among reasonable alternatives remains with government officials who have a unique understanding of, and responsibility for, the public resources necessary to effectuate such roadblocks. *Id.* The Supreme Court also addressed the decision of the Michigan Court of Appeals, *Sitz v. Department of State Police*, 170 Mich.App. 433, 429 N.W.2d 180 (Mich. App.1988), where that court analyzed DWI checkpoints under the *Brown* three-step test and found them to violate the Fourth Amendment. In overruling the Michigan Appellate Court, the Supreme Court placed emphasis on the fact that politically accountable officials are charged with making determinations as to the techniques to be employed when dealing with a serious public danger. This indicates to this Court that it is inappropriate to determine whether any alternative is constitutional until a politically accountable governing body at the State level has authorized these roadblocks.[2] We can look to the background in Michigan for support for this position.

We believe that the mechanics which Michigan utilized to authorize and implement DWI roadblocks demonstrate the proper practice to follow in order to establish a constitutionally viable set of guidelines for DWI roadblocks. The facts of how the Michigan plan was first implemented are laid out in *Sitz v. Department of State Police, supra,*

roadblock until after they had been alerted by the civilian witness, and the appellee's vehicle would not have been stopped by the police but for the DWI roadblock.

**2.** This author has stated previously that the language in *Sitz* makes it necessary for the legislature to create a statewide administrative scheme for DWI roadblocks before any such roadblock would be constitutional. *State v. Wagner*, 810 S.W.2d 207 (Tex.Crim.App.1991). This language has been consistently followed in appellate courts in Texas. *State v. Wagner*, 821 S.W.2d 288 (Tex. App.—Dallas, 1991); *King v. State*, 816 S.W.2d 447 (Tex.App.—Dallas, 1991); *Garcia v. State*, 853 S.W.2d 157 (Tex.App.—Corpus Christi,

1993). A brief analysis of many opinions by courts in other states reveals that other jurisdictions provide little definitive guidance on this issue, and provide little guidance in establishing a universal position based on *Sitz*. Compare *Sims v. Collection Div. of Utah*, 841 P.2d 6 (Utah 1992), and *State v. Thorp*, 71 Wash.App. 175, 856 P.2d 1123 (1993), with *State v. Barker*, 252 Kan. 949, 850 P.2d 885 (1993), and *State v. Blackburn*, 63 Ohio Misc.2d 211, 620 N.E.2d 319 (1991). We expand on this interpretation in accord with the facts laid out in *Sitz v. Michigan Department of State Police*, 170 Mich.App. 433, 429 N.W.2d 180 (1988).

429 N.W.2d 180, 181 (Mich.App.1988). A drunk driving task force established by the Michigan legislature and operating under the direction of the Michigan Department of State Police suggested the implementation of sobriety checkpoints on public highways as one method of combating alcohol-related traffic accidents. In his subsequent State of the State Address, the Michigan governor directed the State Police to implement a sobriety checkpoint program. A sobriety checkpoint committee was appointed and drafted guidelines for the program.

The procedures followed in Michigan and outlined above were never questioned by either the Michigan Appellate Court or the U.S. Supreme Court. The Michigan plan was analyzed under a Fourth Amendment reasonable analysis by both courts. We believe that the Supreme Court implicitly makes it a requirement that for any DWI checkpoint program to pass constitutional muster, it must at a basic minimum be authorized by a statewide policy emanating from a politically accountable governing body. The procedure followed in Michigan in enacting such a program is an example to be followed in Texas when considering DWI checkpoint programs.

■ The Fort Worth Court of Appeals stated that the above-quoted language from the U.S. Supreme Court in *Sitz*, 496 U.S. at 453, 110 S.Ct. at 2487, "instructs courts to defer to officials' choice of enforcement techniques when analyzing prong two of the *Brown* test." *Holt, supra*, 852 S.W.2d at 49 (Tex.App.—Fort Worth 1993). We believe this is incorrect. The courts, under *Sitz*, are not to blindly defer to whatever enforcement techniques are chosen by the officials. Not only must the threshold finding of statewide authorization be made by the courts, but once a state empowers its peace officers with the authority to conduct DWI roadblocks, the enforcement techniques chosen by such officials must be analyzed by the courts to insure that they are in fact reasonable. To blanketly sanction whatever methodology was used by peace officers authorized to conduct DWI roadblocks would circumvent the entire realm of Fourth Amendment search and seizure jurisprudence.

■ Because a governing body in Texas has not authorized a statewide procedure for DWI roadblocks, such roadblocks are unreasonable and unconstitutional under the Fourth Amendment of the U.S. Constitution unless and until a politically accountable governing body sees fit to enact constitutional guidelines regarding such roadblocks.[3]

The judgment of the court of appeals is reversed and the cause is remanded to the trial court.

CAMPBELL, Judge, dissenting.

This is not a difficult case. The question presented is simply whether a state sobriety checkpoint *must* be authorized by the Legislature or some other "statewide governing body" before the checkpoint can be valid under the Fourth Amendment to the United States Constitution.[1] Not surprisingly, the only other high court to address this question, answered it in the negative. *See State v. Barker*, 252 Kan. 949, 850 P.2d 885, 888 (1993).

From 11:00 p.m., Friday, May 24, 1991, to 2:00 a.m., Saturday, May 25, 1991, the Arlington Police Department conducted a sobriety checkpoint in the 1200 block of West Division Street. The checkpoint was conducted safely and politely according to written guidelines promulgated by supervisory personnel within the police department. The location of the checkpoint was also approved by supervisory personnel. All traffic (341 vehicles) was stopped briefly so that officers could look for signs of intoxication on the

---

3. Because we decide this case under the Fourth Amendment to the United States Constitution, we need not address appellee's contentions regarding Article I, Section 9 of the Texas Constitution. Had we been faced with addressing Article I, Section 9, an independent analysis would have been required. *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991).

1. The Fourth Amendment was made applicable to the states by the due process clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

part of drivers. Ten individuals, including appellee Regina H. Holt, were arrested.

Holt was later charged with driving while intoxicated. She filed a pretrial motion to suppress all evidence of her arrest on the ground that the checkpoint stop had not been "reasonable" under the Fourth Amendment and Article I, § 9, of the Texas Constitution. Holt argued that a checkpoint, to be reasonable, must be authorized by the Legislature itself. The trial court granted Holt's motion after concluding that "this checkpoint was illegal under the Fourth Amendment [and Article I, § 9, of the Texas Constitution because] there is no state-wide scheme for sobriety checkpoints promulgated either administratively or legislatively."

The State appealed the trial court's ruling under Article 44.01(a)(5) of the Texas Code of Criminal Procedure, and the Second Court of Appeals reversed. *State v. Holt*, 852 S.W.2d 47 (Tex.App.—Fort Worth 1993). In upholding the constitutionality of the checkpoint stop, the Second Court noted correctly that "[t]he Fourth Amendment's concern is preventing arbitrary seizures, not requiring state-wide plans." *Id.*, at 50.

The majority of this Court now reverses the judgment of the Second Court on the theory that, in *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), "the Supreme Court implicitly makes it a requirement that for any DWI checkpoint program to pass constitutional muster, it must at a basic minimum be authorized by a statewide policy emanating from a politically accountable governing body."[2] 887 S.W.2d, at 19. The only explanation offered for this conclusion is that "the Supreme Court [in *Sitz* ] placed emphasis on the fact that politically accountable officials are charged with making determinations as

to the techniques to be employed when dealing with a serious public danger." *Id.*, at 18.

The language in *Sitz* to which the majority refers is, in context, as follows:

> The [Michigan] Court of Appeals ... consider[ed] as part of the balancing analysis [under *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)[3]] the "effectiveness" of the proposed checkpoint program. Based on extensive testimony in the trial record, the court concluded that the checkpoint program failed the "effectiveness" part of the [balancing] test, and that this failure materially discounted [Michigan's] strong interest in implementing the program. We think the Court of Appeals erred....
>
> The actual language from *Brown v. Texas*, upon which the Michigan courts based their evaluation of "effectiveness," describes the balancing factor as "the degree to which the seizure advances the public interest." *This passage from Brown was not meant to transfer from politically accountable officials to the courts the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public danger.* Experts in police science might disagree over which of several methods of apprehending drunken drivers is preferable as an ideal. But for purposes of Fourth Amendment analysis, the choice among such reasonable alternatives remains with the governmental officials who have a unique understanding of, and a responsibility for, limited public resources, including a finite number of police officers.... [None of our precedents] supports the searching examination of "effectiveness" undertaken by the Michigan court.

*Sitz*, 496 U.S., at 453, 110 S.Ct., at 453–54 (citation omitted; emphasis added).

---

2. Query: If a police department wants to initiate a sobriety checkpoint, from which "politically accountable governing body" should it seek authority?

3. In *Brown v. Texas*, 443 U.S., at 50–51, 99 S.Ct., at 2126–27, the Supreme Court held that, under the Fourth Amendment, the reasonableness of a seizure must be determined by balancing three

factors: "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." In *Sitz* the Supreme Court applied this three-factor balancing test in the context of sobriety checkpoint stops, which are, of course, "seizures" under the Fourth Amendment.

The meaning of this language from *Sitz* is clear. Chief Justice Rehnquist, writing for the majority, was simply addressing the question of whether it was proper for the Michigan judiciary, when undertaking the *Brown* balancing analysis, to substitute its concept of effective law enforcement techniques for that of politically accountable officials in Michigan. Since the Director of the Michigan Department of State Police, at the direction of the Governor, had in fact established the guidelines for the sobriety checkpoint in question, it was logical for the Chief Justice to refer to those guidelines as having been established by "politically accountable officials." But it is an unjustifiable quantum leap from the notion that judges may not second-guess public officials to a requirement that a "statewide governing body" *must* promulgate the guidelines in the first instance.

In both *Brown* and *Sitz,* the Supreme Court was concerned with the ever-ubiquitous clash between society's need for public safety and order, and the individual's desire to be let alone. In neither *Brown* nor *Sitz* did the Supreme Court attempt to prescribe which entities must safeguard the public's interest. The Supreme Court's only concern, under the Fourth Amendment, was the delicate balance of the competing interests in question.

One case cited by the majority, *State v. Barker,* 850 P.2d 885, is on point, but its holding is diametrically opposed to the majority's holding. The *Barker* court held that "[s]pecific legislative authorization is not a prerequisite to the validity of sobriety checkpoints [under the Fourth Amendment]." *State v. Barker,* 850 P.2d, at 888.

The other cases cited by the majority are not even on point. In *State v. Blackburn,* 63 Ohio Misc.2d 211, 620 N.E.2d 319, 324 (Mun. 1993), an Ohio municipal court held that, "[i]n the absence of any substantial justification," sobriety checkpoints were unlawful *under the state constitution.* In *Sims v. Collection Div. of Utah,* 841 P.2d 6, 9 (Utah 1992), the Utah Supreme Court held that suspicionless investigatory checkpoints were unlawful because they were *not even within the police department's general police powers.* Finally, in *State v. Thorp,* 71 Wash.App. 175, 856 P.2d 1123, 1127 (1993), a Washington appellate court held unremarkably that "a *roving stop* [of a moving vehicle] made without probable cause or articulable suspicion" violated the Fourth Amendment. (Emphasis added.)

I continue to share the position held by noted Fourth Amendment scholar Professor LaFave (and the cases cited in his treatise) that sobriety checkpoints, to be valid under the Fourth Amendment, need only be established pursuant to a plan approved by supervisory officers of the law enforcement agencies involved which contains standards with regard to time, place, and other matters. *See State v. Sanchez,* 856 S.W.2d 166, 174 (Tex.Crim.App.1993) (Campbell, J., concurring); 4 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 10.8(d), at 76 (2d ed. & Supp.1994).

I respectfully dissent.

McCORMICK, P.J., and WHITE, J., join.