Hirmon v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-272-CR

WESLEY DAVID HIRMON, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE COUNTY COURT OF WISE COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Wesley David Hirmon, Jr. appeals his conviction for driving while intoxicated.  In a single point, Hirmon contends that the trial court erred  by denying his motion to suppress evidence.  We will affirm.

II.  Factual and Procedural Background

On November 1, 2004, United States Forest Service Officer David Cadle filed a written checkpoint request form, seeking permission to conduct a compliance checkpoint four days later in a portion of the Lyndon B. Johnson National Grasslands in Wise County, Texas.  The request stated that the purposes of the checkpoint were to reduce the accumulation of litter resulting from the “high volume” of traffic on the first weekend of deer season and to advise visitors on safe hunting practices.  The request also noted the specific inquiries to be asked, as well as the information to be provided to those stopped at the checkpoint.  Specifically, the request notes that the Forest Service Officers were to ask for driver’s licenses and  proof of insurance, to remind drivers not to litter, and to inform drivers of proper safety gear to wear while hunting.  Officer Cadle’s supervisor approved the request on November 4, 2004.  On the following day, Officer Cadle, fellow Forest Service Officer Tim Fincham, and Wise County Deputy Sheriff David Bosecker conducted the compliance checkpoint on a forest service road in the Lyndon B. Johnson National Grasslands.  

Officer Cadle, Officer Fincham, and Deputy Bosecker first saw Hirmon on the night in question when he stopped his vehicle approximately thirty feet shy of the compliance checkpoint stop sign.  Officer Fincham and Deputy Bosecker motioned for Hirmon to drive up to the checkpoint.  After asking the two questions specified in the checkpoint request, Officer Fincham smelled alcohol, saw a red plastic cup that smelled like mouthwash combined with liquor, and suspected that Hirmon was intoxicated.  Thereafter, Officer Fincham directed Hirmon to a secondary stop area, and Deputy Bosecker radioed for Department of Public Safety Trooper Whit Klein to assist with what Officer Fincham believed to be a driving while intoxicated offense.  After investigating, Trooper Klein determined that Hirmon was intoxicated and arrested him.  

The State later filed an information and complaint against Hirmon, alleging that he operated a motor vehicle while intoxicated on the night in question.  Hirmon filed a pretrial motion to suppress evidence arising from the stop at the compliance checkpoint.  Hirmon alleged that the evidence obtained from the stop at the compliance checkpoint was not pursuant to a search warrant, that there were no exigent circumstances, and that the officers had no probable cause to believe he was engaged in criminal activity.  After considering testimony from Officer Cadle, Officer Fincham, and Trooper Klein, the trial court overruled Hirmon’s motion to suppress.  Subsequently, Hirmon pleaded no contest to the charges and received the trial court’s permission to appeal the ruling on the suppression hearing.  This appeal followed.

III.  Motion to Suppress

In his sole point, Hirmon contends that the trial court erred by denying his motion to suppress evidence.  
Specifically, Hirmon contends that the compliance checkpoint was nothing more than a pretext for obtaining probable cause to make DWI arrests and to enforce other state laws. 

A.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

When reviewing a trial court’s ruling on a mixed question of law and fact, the court of appeals may review de novo the trial court’s application of the law of search and seizure to the facts of the case.  
Estrada
, 154 S.W.3d at 607.  When there are no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court’s ruling.  
Id
.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

B.  Fourth Amendment Law

The Fourth Amendment protects against unreasonable searches and seizures, and 
applies to all seizures of the person, including seizures that involve only a brief detention short of a traditional arrest.   U.S. 
Const
. amend. IV
; 
Brown v. Texas
, 443 U.S. 47, 50, 99 S. Ct. 2637, 2640 (1979).  The law is well settled that a Fourth Amendment seizure occurs when a vehicle is stopped at a roadside checkpoint.  
See United States v. Martinez-Fuerte
, 428 U.S. 543, 556, 96 S. Ct. 3074, 3082 (1976); 
Holt v. State
, 887 S.W.2d 16, 18 (Tex. Crim. App. 1994).
  When a seizure occurs in that manner, the Fourth Amendment requires that the seizure be reasonable.  
See Brown
, 443 U.S. at 50, 99 S. Ct. at 2640; 
United States v. Brignoni-Ponce
, 422 U.S. 873, 878, 95 S. Ct. 2574, 2578 (1975).  
Because Forest Service Officers stopped Hirmon’s vehicle at a roadside checkpoint, it is clear that a seizure occurred.  We therefore proceed with an analysis of whether this seizure of Hirmon—which led to the discovery of the evidence he sought to suppress—was reasonable.

C.  Reasonableness of Seizure

Hirmon alleges that the compliance checkpoint at issue was an unreasonable seizure because it was essentially a DWI roadblock and that Officer Cadle’s stated reasons for the checkpoint were merely a pretext.  To support his argument, Hirmon cites 
Holt
, in which the court of criminal appeals held that DWI roadblocks were unreasonable and unconstitutional because a governing body in Texas had not authorized a statewide procedure for them.  887 S.W.2d at 19.  In this case, however, we address a compliance checkpoint implemented for stated purposes other than preventing DWI offenses by a federal body that has implemented nationwide procedures for these checkpoints.  
See, e.g., 
16 U.S.C.A § 551a (2000) (permitting Forest Service personnel to cooperate with state officials in enforcement of state laws and local ordinances), 
and
 16 U.S.C.A. § 559d (2000) (authorizing Forest Service personnel to cooperate with federal and state law enforcement officials in the enforcement of federal and state controlled substance laws)
.  Accordingly, 
Holt
 is not controlling for this case as it applies only to roadblocks conducted by state or local law enforcement for the purpose of preventing DWI offenses.  

Moreover, nothing in the record supports Hirmon’s contention that the checkpoint was a pretext for securing 
probable cause to make DWI arrests.  The testimony at the suppression hearing addressed the purposes recited in the checkpoint application, and established that each vehicle that approached was stopped; the stops were not random.  Even if the Forest Service Officers had some other subjective intent for implementing the checkpoint, the stated purposes of and the actual execution of the checkpoint render it lawful under both federal and state law.  
See, e.g., Whren v. United States
, 517 U.S. 806, 812, 116 S. Ct. 1769, 1773-74 (1996) (holding that “[n]ot only have we never held, outside the context of inventory search or administrative inspection, that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary.”); 
State v. Gray
, 158 S.W.3d 465, 469-70 (Tex. Crim. App. 2005) (stating that “[t]he fact that the officer may have had another subjective motive for seizing [the defendant] would not have made an objectively reasonable seizure unlawful under the constitutions of the United States or of this state”).
  Accordingly, Hirmon’s allegation that the checkpoint was not a valid seizure, but merely a pretext to pursue DWI offenses is unsupported.

Although Forest Service Officers set up the checkpoint for a purpose other than investigating DWIs, it resulted in Hirmon’s seizure and we must nevertheless determine whether the seizure was reasonable.  
Illinois v. Lidster
, 540 U.S. 419, 426, 124 S. Ct. 885, 890 (2004); 
Michigan v. Sitz
, 496 U.S. 444, 450, 110 S. Ct. 2481, 2485 (1990);
 Brown
, 443 U.S. at 50, 99 S. Ct. at 2640
.  In judging reasonableness, we look to the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.  
Lidster
, 540 U.S. at 427, 124 S. Ct. at 890; 
see also Sitz
, 496 U.S. at 448-49, 110 S. Ct. at 2484; 
Brown
, 443 U.S. at 51, 99 S. Ct. at 2640; 
Martinez-Fuerte
, 428 U.S. at 556-64, 96 S. Ct. at 3082-85.

1.  Public Concerns Served

The Forest Service compliance checkpoint addressed two public concerns.  First, the compliance checkpoint sought to ensure compliance with traffic laws by requesting driver’s licenses and proof of insurance.  Second, the checkpoint sought to dispense information about hunting safety. 
 The law is well settled that checkpoints established for purposes of verifying driver’s licenses and vehicle registrations are permissible.  
See Indianapolis v. Edmond
, 531 U.S. 32, 37-38, 121 S. Ct. 447, 452 (2000); 
Delaware v. Prouse
, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401 (1979) (approving such checkpoints if applicable to all vehicles coming through checkpoint).  Likewise, we see no reason why a checkpoint verifying driver’s licenses and proof of insurance would be impermissible.  The general public concerns for ensuring both vehicle registrations and proof of insurance are analagous.  Moreover, neither party disputes that there is a grave public concern for ensuring hunting safety.

2.  Public Interest Advanced

The compliance checkpoint advanced these concerns to a significant degree.  The Forest Service Officers waited to conduct this checkpoint until the opening weekend of deer season—a weekend described as a “madhouse” where there are a lot of people hunting, hiking, riding horses, and camping.  They issued fourteen citations, including violations for no liability insurance.  During the four-hour period, they were also able to advise all seventeen drivers who entered the checkpoint about hunting safety.  

3.  Minimal Interference with Liberty

Significantly, however, the stops at the compliance checkpoint interfered only minimally with the liberty protected by the Fourth Amendment.
(footnote: 2)  Forest Service Officers stopped each car for approximately five to ten minutes to request proof of insurance and driver’s licenses and to advise them about hunting safety.  
Cf. Lidster
, 540 U.S. at 427, 124 S. Ct. at 891 (upholding stops of a few minutes);
 Martinez-Fuerte
, 428 U.S. at 547, 96 S. Ct. at 3078
 (upholding stops of three to five minutes).  

In addressing the interference-with-individual-liberties factor, 
the United States Supreme Court noted in 
Brown 
that if there are no objective facts indicating society’s legitimate interests requiring an individual’s seizure, then the Fourth Amendment requires that a seizure be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.  443 U.S. at 51, 99 S. Ct. at 2640.  Here, a Forest Service Handbook clearly delineates guidelines and restrictions applicable to all Forest Service Officers who implement this type of compliance checkpoint.  The handbook outlines the procedural requirements for getting a compliance checkpoint approved, as well as the approved topics to be addressed at the checkpoint, including vehicle licensing requirements and hunting and safety concerns.  The trial court heard testimony about these requirements at the suppression hearing, and the State entered the relevant portion of the handbook into evidence without objection.  
Accordingly, these explicit, neutral limitations imposed upon Forest Service Officers’s conduct by the handbook demonstrate that the compliance checkpoint did not substantially interfere with Hirmon’s individual liberties.  
Id.

4.  Balancing Favors Checkpoint

In sum, the balance of the public interests involved, the extent to which the compliance checkpoint advanced those interests, and the minimal degree of intrusion upon Hirmon’s liberty interests weighs in favor of the Forest Service compliance checkpoint.  We therefore hold that the compliance checkpoint at issue here was consistent with the Fourth Amendment.  
See, e.g., Drane v. State
, 493 So. 2d 294, 297 (Miss. 1986) (holding that a stop and search of appellant’s vehicle by game wardens at roadblock in game area did not violate the Fourth Amendment).  Because the compliance checkpoint did not violate Hirmon’s Fourth Amendment rights, his seizure resulting from the checkpoint was reasonable.  Consequently, the trial court’s ruling on the motion to suppress was supported by the record and did not constitute an abuse of discretion.  
See Armendariz
, 123 S.W.3d at 404; 
Sanchez v. State
, No. 05-04-00820-CR, 2005 WL 858942, at *2 (Tex. App.—Dallas Apr. 15, 2005, pet. ref’d) (not designated for publication). Therefore, we overrule Hirmon’s sole point.

IV.  Conclusion

Having overruled Hirmon’s sole point, we affirm the judgment of the trial court.  

SUE WALKER

JUSTICE 

PANEL A: LIVINGSTON, WALKER and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: October 5, 2006 

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Neither party raises a distinction between checkpoints on federal or state public highways as opposed to those on private forest service roads, as here.  But a distinction would appear to exist between motorists’s expectations and individual liberty interests when traveling on a public highway as opposed to traveling on a narrow, dirt forest service road within a national forest.