COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

NO. 2-05-272-CR

 

 

 

WESLEY DAVID HIRMON, JR.                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

FROM THE COUNTY
COURT OF WISE COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

 

I.  Introduction

Appellant Wesley David Hirmon, Jr. appeals his
conviction for driving while intoxicated. 
In a single point, Hirmon contends that the trial court erred  by denying his motion to suppress
evidence.  We will affirm.

 








 

II.  Factual and Procedural Background

On November 1, 2004, United States Forest Service
Officer David Cadle filed a written checkpoint request form, seeking permission
to conduct a compliance checkpoint four days later in a portion of the Lyndon
B. Johnson National Grasslands in Wise County, Texas.  The request stated that the purposes of the
checkpoint were to reduce the accumulation of litter resulting from the Ahigh
volume@ of
traffic on the first weekend of deer season and to advise visitors on safe
hunting practices.  The request also
noted the specific inquiries to be asked, as well as the information to be
provided to those stopped at the checkpoint. 
Specifically, the request notes that the Forest Service Officers were to
ask for driver=s licenses and  proof of insurance, to remind drivers not to
litter, and to inform drivers of proper safety gear to wear while hunting.  Officer Cadle=s supervisor
approved the request on November 4, 2004. 
On the following day, Officer Cadle, fellow Forest Service Officer Tim
Fincham, and Wise County Deputy Sheriff David Bosecker conducted the compliance
checkpoint on a forest service road in the Lyndon B. Johnson National
Grasslands.  








Officer Cadle, Officer Fincham, and Deputy
Bosecker first saw Hirmon on the night in question when he stopped his vehicle
approximately thirty feet shy of the compliance checkpoint stop sign.  Officer Fincham and Deputy Bosecker motioned
for Hirmon to drive up to the checkpoint. 
After asking the two questions specified in the checkpoint request,
Officer Fincham smelled alcohol, saw a red plastic cup that smelled like mouthwash
combined with liquor, and suspected that Hirmon was intoxicated.  Thereafter, Officer Fincham directed Hirmon
to a secondary stop area, and Deputy Bosecker radioed for Department of Public
Safety Trooper Whit Klein to assist with what Officer Fincham believed to be a
driving while intoxicated offense.  After
investigating, Trooper Klein determined that Hirmon was intoxicated and
arrested him.  

The State later filed an information and
complaint against Hirmon, alleging that he operated a motor vehicle while
intoxicated on the night in question. 
Hirmon filed a pretrial motion to suppress evidence arising from the
stop at the compliance checkpoint. 
Hirmon alleged that the evidence obtained from the stop at the compliance
checkpoint was not pursuant to a search warrant, that there were no exigent
circumstances, and that the officers had no probable cause to believe he was
engaged in criminal activity.  After
considering testimony from Officer Cadle, Officer Fincham, and Trooper Klein,
the trial court overruled Hirmon=s motion
to suppress.  Subsequently, Hirmon
pleaded no contest to the charges and received the trial court=s
permission to appeal the ruling on the suppression hearing.  This appeal followed.








 

III.  Motion to Suppress

In his sole point, Hirmon contends that the trial
court erred by denying his motion to suppress evidence.  Specifically, Hirmon contends that the
compliance checkpoint was nothing more than a pretext for obtaining probable
cause to make DWI arrests and to enforce other state laws. 

A. 
Standard of Review








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
Therefore, we give almost total deference to the trial court=s
rulings on (1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort
Worth 2004, pet. ref=d).  But when the trial court=s
rulings do not turn on the credibility and demeanor of the witnesses, we review
de novo a trial court=s rulings on mixed questions of
law and fact.  Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

When reviewing a trial court=s ruling
on a mixed question of law and fact, the court of appeals may review de novo
the trial court=s application of the law of
search and seizure to the facts of the case. 
Estrada, 154 S.W.3d at 607. 
When there are no explicit findings of historical fact, the evidence
must be viewed in the light most favorable to the trial court=s
ruling.  Id.

We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.  Armendariz v. State, 123 S.W.3d 401,
404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004); Ross,
32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  

B.  Fourth
Amendment Law








The Fourth Amendment protects against
unreasonable searches and seizures, and applies to all seizures of the person,
including seizures that involve only a brief detention short of a traditional
arrest.   U.S. Const. amend. IV; Brown v. Texas, 443 U.S. 47, 50, 99
S. Ct. 2637, 2640 (1979).  The law is
well settled that a Fourth Amendment seizure occurs when a vehicle is stopped
at a roadside checkpoint.  See United
States v. Martinez-Fuerte, 428 U.S. 543, 556, 96 S. Ct. 3074, 3082 (1976); Holt
v. State, 887 S.W.2d 16, 18 (Tex. Crim. App. 1994).  When a seizure occurs in that manner, the
Fourth Amendment requires that the seizure be reasonable.  See Brown, 443 U.S. at 50, 99 S. Ct.
at 2640; United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S. Ct.
2574, 2578 (1975).  Because Forest
Service Officers stopped Hirmon=s
vehicle at a roadside checkpoint, it is clear that a seizure occurred.  We therefore proceed with an analysis of
whether this seizure of HirmonCwhich
led to the discovery of the evidence he sought to suppressCwas
reasonable.

C. 
Reasonableness of Seizure








Hirmon alleges that the compliance checkpoint at
issue was an unreasonable seizure because it was essentially a DWI roadblock
and that Officer Cadle=s stated reasons for the
checkpoint were merely a pretext.  To
support his argument, Hirmon cites Holt, in which the court of criminal
appeals held that DWI roadblocks were unreasonable and unconstitutional because
a governing body in Texas had not authorized a statewide procedure for
them.  887 S.W.2d at 19.  In this case, however, we address a
compliance checkpoint implemented for stated purposes other than preventing DWI
offenses by a federal body that has implemented nationwide procedures for these
checkpoints.  See, e.g., 16
U.S.C.A ' 551a
(2000) (permitting Forest Service personnel to cooperate with state officials
in enforcement of state laws and local ordinances), and 16 U.S.C.A. ' 559d
(2000) (authorizing Forest Service personnel to cooperate with federal and
state law enforcement officials in the enforcement of federal and state
controlled substance laws).  Accordingly,
Holt is not controlling for this case as it applies only to roadblocks
conducted by state or local law enforcement for the purpose of preventing DWI
offenses.  








Moreover, nothing in the record supports Hirmon=s
contention that the checkpoint was a pretext for securing probable cause to
make DWI arrests.  The testimony at the
suppression hearing addressed the purposes recited in the checkpoint
application, and established that each vehicle that approached was stopped; the
stops were not random.  Even if the Forest
Service Officers had some other subjective intent for implementing the
checkpoint, the stated purposes of and the actual execution of the checkpoint
render it lawful under both federal and state law.  See, e.g., Whren v. United States, 517
U.S. 806, 812, 116 S. Ct. 1769, 1773-74 (1996) (holding that A[n]ot
only have we never held, outside the context of inventory search or
administrative inspection, that an officer's motive invalidates objectively
justifiable behavior under the Fourth Amendment; but we have repeatedly held
and asserted the contrary.@); State
v. Gray, 158 S.W.3d 465, 469-70 (Tex. Crim. App. 2005) (stating that A[t]he
fact that the officer may have had another subjective motive for seizing [the
defendant] would not have made an objectively reasonable seizure unlawful under
the constitutions of the United States or of this state@).  Accordingly, Hirmon=s
allegation that the checkpoint was not a valid seizure, but merely a pretext to
pursue DWI offenses is unsupported.

Although Forest Service Officers set up the
checkpoint for a purpose other than investigating DWIs, it resulted in Hirmon=s
seizure and we must nevertheless determine whether the seizure was
reasonable.  Illinois v. Lidster,
540 U.S. 419, 426, 124 S. Ct. 885, 890 (2004); Michigan v. Sitz, 496
U.S. 444, 450, 110 S. Ct. 2481, 2485 (1990); Brown, 443 U.S. at 50, 99
S. Ct. at 2640.  In judging
reasonableness, we look to the gravity of the public concerns served by the
seizure, the degree to which the seizure advances the public interest, and the
severity of the interference with individual liberty.  Lidster, 540 U.S. at 427, 124 S. Ct.
at 890; see also Sitz, 496 U.S. at 448-49, 110 S. Ct. at 2484; Brown,
443 U.S. at 51, 99 S. Ct. at 2640; Martinez-Fuerte, 428 U.S. at 556-64,
96 S. Ct. at 3082-85.

1. 
Public Concerns Served








The Forest Service compliance checkpoint
addressed two public concerns.  First,
the compliance checkpoint sought to ensure compliance with traffic laws by
requesting driver=s licenses and proof of
insurance.  Second, the checkpoint sought
to dispense information about hunting safety. 
The law is well settled that checkpoints established for purposes of
verifying driver=s licenses and vehicle
registrations are permissible.  See
Indianapolis v. Edmond, 531 U.S. 32, 37-38, 121 S. Ct. 447, 452 (2000); Delaware
v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401 (1979) (approving such
checkpoints if applicable to all vehicles coming through checkpoint).  Likewise, we see no reason why a checkpoint
verifying driver=s licenses and proof of
insurance would be impermissible.  The
general public concerns for ensuring both vehicle registrations and proof of
insurance are analagous.  Moreover,
neither party disputes that there is a grave public concern for ensuring
hunting safety.

2. 
Public Interest Advanced

The compliance checkpoint advanced these concerns
to a significant degree.  The Forest
Service Officers waited to conduct this checkpoint until the opening weekend of
deer seasonCa weekend described as a Amadhouse@ where
there are a lot of people hunting, hiking, riding horses, and camping.  They issued fourteen citations, including
violations for no liability insurance. 
During the four-hour period, they were also able to advise all seventeen
drivers who entered the checkpoint about hunting safety.  

 








 

3. 
Minimal Interference with Liberty

Significantly, however, the stops at the
compliance checkpoint interfered only minimally with the liberty protected by
the Fourth Amendment.[2]  Forest Service Officers stopped each car for
approximately five to ten minutes to request proof of insurance and driver=s
licenses and to advise them about hunting safety.  Cf. Lidster, 540 U.S. at 427, 124 S.
Ct. at 891 (upholding stops of a few minutes); Martinez-Fuerte, 428 U.S.
at 547, 96 S. Ct. at 3078 (upholding stops of three to five minutes).  








In addressing the
interference-with-individual-liberties factor, the United States Supreme Court
noted in Brown that if there are no objective facts indicating society=s
legitimate interests requiring an individual=s
seizure, then the Fourth Amendment requires that a seizure be carried out
pursuant to a plan embodying explicit, neutral limitations on the conduct of
individual officers.  443 U.S. at 51, 99
S. Ct. at 2640.  Here, a Forest Service
Handbook clearly delineates guidelines and restrictions applicable to all
Forest Service Officers who implement this type of compliance checkpoint.  The handbook outlines the procedural
requirements for getting a compliance checkpoint approved, as well as the
approved topics to be addressed at the checkpoint, including vehicle licensing
requirements and hunting and safety concerns. 
The trial court heard testimony about these requirements at the
suppression hearing, and the State entered the relevant portion of the handbook
into evidence without objection. 
Accordingly, these explicit, neutral limitations imposed upon Forest
Service Officers=s conduct by the handbook
demonstrate that the compliance checkpoint did not substantially interfere with
Hirmon=s
individual liberties.  Id.

4. 
Balancing Favors Checkpoint








In sum, the balance of the public interests
involved, the extent to which the compliance checkpoint advanced those
interests, and the minimal degree of intrusion upon Hirmon=s
liberty interests weighs in favor of the Forest Service compliance
checkpoint.  We therefore hold that the
compliance checkpoint at issue here was consistent with the Fourth
Amendment.  See, e.g., Drane v. State,
493 So. 2d 294, 297 (Miss. 1986) (holding that a stop and search of appellant=s
vehicle by game wardens at roadblock in game area did not violate the Fourth
Amendment).  Because the compliance
checkpoint did not violate Hirmon=s Fourth
Amendment rights, his seizure resulting from the checkpoint was
reasonable.  Consequently, the trial
court=s ruling
on the motion to suppress was supported by the record and did not constitute an
abuse of discretion.  See Armendariz,
123 S.W.3d at 404; Sanchez v. State, No. 05-04-00820-CR, 2005 WL 858942,
at *2 (Tex. App.CDallas Apr. 15, 2005, pet. ref=d) (not
designated for publication). Therefore, we overrule Hirmon=s sole
point.

IV.  Conclusion

Having overruled Hirmon=s sole
point, we affirm the judgment of the trial court.  

SUE
WALKER

JUSTICE    

 

PANEL A: LIVINGSTON,
WALKER and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: October 5,
2006











[1]See Tex. R. App. P. 47.4.





[2]Neither party raises a
distinction between checkpoints on federal or state public highways as opposed
to those on private forest service roads, as here.  But a distinction would appear to exist
between motorists=s expectations and
individual liberty interests when traveling on a public highway as opposed to
traveling on a narrow, dirt forest service road within a national forest.