**Michael R. FINK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–93–00028–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 4, 1993.

Danny R. Barfield, Pasadena, for appellant.

John B. Holmes, Jr., Rikke Burke Graber, Kelly Colquette, Houston, for appellee.

Before HUTSON–DUNN, ANDELL and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

Appellant, Michael R. Fink, was charged by information with the misdemeanor offense of driving while intoxicated. In a motion to suppress evidence, appellant claimed he was arrested after an unlawful detention at a driver's license checkpoint. The trial court denied appellant's motion to suppress[1] and, upon appellant's plea of nolo contendere, assessed punishment at two-years confinement in the Harris County jail, probated for two years, and a fine of $300. On appeal, appellant claims that he was illegally seized and arrested in violation of the fourth amendment to the United States Constitution and article I, section 9 of the Texas Constitution. We reverse the judgment and remand the cause to the trial court.

On September 13, 1992, Pasadena Police Officer Susan Clinton, along with three other officers, set up a roadblock checkpoint at the 2900 block of Lafferty in Pasadena. Beginning at 10:30 p.m., the officers detained all north and southbound traffic to check for driver's license and insurance violations.

Appellant arrived at the roadblock at approximately 12:30 a.m. He slowly rolled past the officers without stopping, until Officer Clinton tapped on the hood of appellant's car. When appellant stopped his car and rolled down his window, Officer Clinton smelled a strong odor of alcohol. The officer requested appellant's driver's license. As appellant searched for it, he took his foot off the brake

and the car began rolling. Officer Clinton asked appellant to pull his car into the parking lot, where she arrested him for driving while intoxicated.

▮ Recently, the Texas Court of Criminal Appeals considered the reasonableness of a roadblock set up in nearly an identical manner as the one before us. In *State v. Sanchez*, 856 S.W.2d 166 (Tex.Crim.App. 1993), the court first noted that the stopping of a vehicle constitutes a "seizure" for fourth amendment purposes. *Id.* at 168. The fourth amendment, however, does not prohibit all seizures, only those that are unreasonable. *Id.*

> A roadblock search falls into the category of a "suspicionless search". [*United States v.*] *Martinez–Fuerte*, 428 U.S. 543, 561–62, 96 S.Ct. 3074, 3084–85 [49 L.Ed.2d 1116 (1976)]. A "suspicionless search" is a search conducted in the absence of a warrant and without probable cause or reasonable suspicion. These types of searches originated as an administrative or regulatory necessity, such as building inspections where premises are inspected in the absence of any indicia of violations.

*Id.* at 168, n. 4.

A "suspicionless search" is reasonable when it meets the balancing test established in *Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979). *Sanchez*, 856 S.W.2d at 168. The public interest must be balanced against the individual's right to personal security in light of three factors: (1) the state interest involved; (2) the level of intrusion on the individual's privacy; and (3) the effectiveness of the procedure used in achieving its stated goal. *Brown*, 443 U.S. at 50–51, 99 S.Ct. at 2640; *Sanchez*, 856 S.W.2d at 168.

In *Sanchez*, the defendant was indicted for unlawful possession of between 50 and 200 pounds of marijuana in the trunk of his vehicle. *Sanchez*, 856 S.W.2d at 167. Four Texas Department of Public Safety officers set up a roadblock checkpoint in Victoria County without the authorization of a superior offi-

---

1. Although the record does not indicate a ruling, the parties agree that the trial court denied appellant's motion to suppress.

cer. *Id.* All northbound traffic was stopped for questioning concerning driver's licenses and insurance, and vehicles were inspected for equipment violations. *Id.* After brief questioning of the defendant, the officers discovered the marijuana in his truck. *Id.* In a plurality opinion, the court held that "[i]n the absence of evidence of authoritatively standardized procedures followed in operating the subject roadblock in order to serve its stated purpose and minimize the officers' discretion, and in the absence of testimony or empirical evidence demonstrating the effectiveness of the roadblock," the roadblock was unreasonable under the fourth amendment. *Id.* at 170.

In reaching its conclusion, the court in *Sanchez* observed that: (1) the roadblock was established by four individual officers; (2) the record was void of any showing that the officers followed standardized guidelines in operating the roadblock; (3) the officers acted without the authorization or guidance of superior officers; (4) the officers acted without established procedures concerning the location of the roadblock or its operation; and (5) the record was void of any showing demonstrating the effectiveness of the roadblock in achieving its stated goals. *Id.* at 169–70.

In the case before us, Officer Clinton was the only witness to testify at the hearing on the motion to suppress. The record reflects that: (1) the four officers decided to set up the roadblock; (2) the four officers determined the location of the roadblock; (3) no department guidelines existed concerning license and insurance roadblocks; (4) no supervisors instructed the officers to set up or maintain the roadblock; (5) no department guidelines existed concerning the time or manner of execution of the roadblock.

The State argues that this Court should depart from the *Sanchez* holding, and instead follow the policy considerations set forth in the *Sanchez* concurring opinion and recognized in the lead opinion. The concurrence balanced the level of intrusion on the defendant's privacy against the following governmental interest in the inspection of driver's licenses and insurance.

It is abundantly clear that the state has "a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation," *Delaware v. Prouse,* 440 U.S. [648] at 658, 99 S.Ct. [1391] at 1398 [59 L.Ed.2d 660 (1979)], and hence that licensing, registration, liability insurance, and vehicle inspection requirements are being observed. It is equally clear that this strong state interest—at least with respect to statutory licensing and insurance requirements—cannot be adequately dealt with by more traditional law enforcement techniques involving case-by-case determinations of what persons are to be interfered with. In other words, it would be impractical to require law enforcement personnel to have a warrant or some level of individualized suspicion in this context. *Compare United States v. Martinez–Fuerte,* 428 U.S. at 557–562, 96 S.Ct. at 3082–85. This is so because, as common sense dictates, there is never an *observable* indication, from a moving vehicle, of a licensing or insurance statute violation. See *Higbie v. State,* 780 S.W.2d 228, 237 (Tex.Crim.App.1989) (plurality opinion).

It is also plain that highway checkpoints are reasonably effective in advancing the state interest in question. First, as noted previously, there is no practical alternative technique for detecting licensing and liability insurance violations. Second, highway checkpoints, if used with sufficient frequency, can act as substantial deterrents to licensing and liability insurance violations. Third, although the likely "success" in the sense of stop/apprehension percentages may be small, a checkpoint, wherever located, will certainly reveal whatever percentage of the driving population that is in fact violating the licensing and liability insurance statutes. Finally, checkpoints are "more efficient [than the random stops condemned in *Delaware v. Prouse*] in the sense of bringing about a higher number of stops and thus discovery of a higher number of violations." 4 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 10.8(d), fn. 100.1 (2d ed. 1987 & Supp.1993).

*Sanchez,* 856 S.W.2d at 173 (Campbell, J., concurring opinion) (footnote omitted). The concurrence concluded that *"in this case,"* the level of intrusion outweighed the governmental interest, but that "had the checkpoint been conducted with executive-level approval and according to written, departmental guidelines, the delicate balance of competing interests *would certainly have led to a different result." Id.* at 175.

 By recognizing only the governmental interest, the State is suggesting that this Court ignore the competing level of intrusion on appellant's expectation of privacy that must be considered under the fourth amendment analysis formulated in *Brown,* 443 U.S. at 50–51, 99 S.Ct. at 2640. We cannot do so.

In its review of defendant's expectation of privacy and security, the *Sanchez* concurrence considered the extent to which those expectations were "subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Sanchez,* 856 S.W.2d at 174 (citing *Brown,* 443 U.S. at 51, 99 S.Ct. at 2640).

> Police procedures are less threatening to Fourth Amendment interests when the discretionary authority of the officer in the field—and thus the primary risk of arbitrary action—is kept at an absolute minimum. If the discretion of the officer in the field is not kept at a minimum, then abuse of that discretion will inevitably occur, and the Fourth Amendment guarantee against unreasonable searches and seizures will be undermined.

*Sanchez,* 856 S.W.2d at 175 (Campbell, J., concurring opinion).

 The case before us is strikingly similar to *Sanchez* in that the officers in the field set up the checkpoint on their own initiative and without supervisory approval or departmental guidelines regarding the operation of the checkpoint. This situation presents a serious risk of abuse of the officers' discretion, and thereby intrudes greatly on appellant's fourth amendment interest in being free of arbitrary and oppressive searches and seizures. *Id.*

Because the record establishes that there was no authorization by or guidance from a superior officer, and no established, standardized procedures minimizing the field officers' discretion, the seizure of appellant at the roadblock was unreasonable under the fourth amendment. Appellant's first point of error is sustained. Because of our disposition under the fourth amendment, we need not consider appellant's second point of error, his claim that the seizure was unreasonable under article I, section 9 of the Texas Constitution.

The trial court erred in overruling appellant's motion to suppress evidence. We reverse the judgment and remand the cause to the trial court.