STATE of Texas, Appellant,

v.

Ryan William LUXON, Appellee.

No. 11–06–00097–CR.

Court of Appeals of Texas,
Eastland.

July 12, 2007.

James H. Owen, County Atty., Brendan W. Guy, Asst. County Attys. Office, Athens, for appellant.

Douglas Scott Williams, Athens, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

Ryan William Luxon was charged with the misdemeanor offense of driving while intoxicated. In a motion to suppress, Luxon claimed that he was arrested as the result of an illegal stop and seizure at a roadblock set up by police officers. Luxon asserted that the roadblock violated his rights under the Fourth Amendment to the United States Constitution and Article I, section 9 of the Texas Constitution. The trial court granted Luxon's motion. In a sole appellate issue, the State complains that the trial court erred in granting Luxon's motion to suppress. Because the State failed to meet its burden to prove that the warrantless seizure of Luxon was reasonable under the Fourth Amendment, we affirm the judgment of the trial court.

*Evidence at Suppression Hearing*

On August 13, 2005, Shawn McCullough and Ricardo Garza were patrol officers for the Payne Springs Police Department. On that day, Officers McCullough and Garza conducted a driver's license checkpoint. Officers McCullough and Garza were not employed by the Payne Springs Police Department at the time of the suppression hearing, and they did not testify at the hearing. Instead, the State presented testimony from Payne Springs Police Chief Tim Meadows. Chief Meadows testified that he was a sergeant for the Payne Springs Police Department when Officers McCullough and Garza conducted the subject checkpoint. He also testified that he had no personal knowledge regarding the checkpoint and that he learned about the checkpoint from Officers McCullough and Garza after they conducted it.

Thus, Chief Meadows's testimony about the checkpoint was based on information that he received from Officers McCullough and Garza. With respect to the operation of the checkpoint, Chief Meadows testified that Officers McCullough and Garza told him that they were checking driver's licenses at the checkpoint and that they were stopping every car that arrived at the checkpoint. Chief Meadows's testimony indicated that Officer McCullough stopped Luxon's vehicle during the operation of the checkpoint. The State introduced into evidence Officer McCullough's offense report relating to the arrest of Luxon. The report indicated that Officer McCullough approached Luxon's vehicle at about 10:30 p.m. while Officer McCullough was conducting a driver's license check at the intersection of Double Bridge Road and Frazier Lane. The report also indicated that Officer McCullough arrested Luxon for driving while intoxicated after speaking with Luxon and smelling an odor of alcohol coming from within Luxon's vehicle.

Chief Meadows testified that he did not give Officers McCullough and Garza permission to operate the driver's license checkpoint. Chief Meadows said that Officers McCullough and Garza had previously asked him whether they could run a driver's license checkpoint. At that time, Chief Meadows believed that driver's license checkpoints were illegal, and he testified that he told Officers McCullough and Garza that he would have to check with Wade Norris, the police chief at the time, about their request to operate a checkpoint. Chief Meadows testified that he had not checked into their request when they conducted the checkpoint. He also testified that, as far as he knew, Chief Norris did not give Officers McCullough and Garza permission to conduct the checkpoint. Rather, Chief Meadows said that Officers McCullough and Garza made the decision to operate the checkpoint on their own, based on the approval of Officer Garza, who was the senior patrol officer. However, Chief Meadows explained that the operation of the checkpoint was not an appropriate exercise of Officer Garza's authority.

Chief Meadows also testified that he did not know how the checkpoint was set up or where Officers McCullough and Garza conducted the checkpoint. Chief Meadows believed that Officers McCullough and Garza set up the checkpoint on County Road 2516, but he said that the checkpoint could have been set up at any one of the three intersections located on County Road 2516 in Payne Springs. Chief Meadows also testified that he did not know how many people Officers McCullough and Garza stopped during the operation of the checkpoint. While Chief Meadows believed that Officers McCullough and Garza caught some people driving without licenses, he testified that he did not know how many arrests resulted from the checkpoint. Chief Meadows said that he had no statistical information relating to the effectiveness of the checkpoint and that he could not provide any kind of empirical evidence as to whether the checkpoint worked.

Chief Meadows also testified that the Payne Springs Police Department did not normally conduct driver's license checkpoints. He also said that the Payne Springs Police Department did not have any standardized procedures for conducting checkpoints.

### The Trial Court's Ruling

The trial court entered findings of fact and conclusions of law in support of its order granting Luxon's motion to suppress. In summary, the trial court found that Luxon's vehicle was stopped pursuant to the subject driver's license roadblock, that the Payne Springs Police Department

did not have any standardized procedures for conducting driver's license roadblocks, and that the State did not present any testimony or empirical evidence demonstrating the effectiveness of the subject roadblock. The trial court concluded (1) that there was no evidence Officer McCullough followed authoritatively standardized procedures in operating the roadblock in order to serve the roadblock's stated purpose and to minimize the officers' discretion in operating the roadblock and (2) that there was no testimony or empirical evidence demonstrating the effectiveness of the roadblock. Based on the absence of such evidence, the trial court concluded that the roadblock was illegal.

### Standard of Review

■ We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App.2002). In reviewing a trial court's ruling on a motion to suppress raising a Fourth Amendment claim, appellate courts must give great deference to the trial court's determination of historical facts while reviewing the trial court's application of Fourth Amendment search and seizure law de novo. *Torres v. State*, 182 S.W.3d 899, 902 (Tex.Crim.App. 2005); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). An appellate court must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App.2006). When, as here, a trial court makes explicit fact findings, the appellate court determines whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Id.* We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor.

*Guzman*, 955 S.W.2d at 89. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id.; Myers v. State*, 203 S.W.3d 873, 879 (Tex.App.-Eastland 2006, pet. ref'd).

■ The initial burden of proof on a motion to suppress evidence on the basis of a Fourth Amendment violation rests with the defendant. *Torres*, 182 S.W.3d at 902; *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986). The defendant meets this burden by demonstrating that the search or seizure occurred without a warrant. *Torres*, 182 S.W.3d at 902; *Russell*, 717 S.W.2d at 9. Thereafter, the burden shifts to the State to prove the reasonableness of the warrantless search. *Torres*, 182 S.W.3d at 902; *Russell*, 717 S.W.2d at 9–10.

### Constitutionality of Subject Roadblock

■ The evidence at the suppression hearing showed that Officers McCullough and Garza stopped Luxon's vehicle at the subject roadblock. By stopping Luxon's vehicle at the roadblock, the officers effectuated a seizure of Luxon within the meaning of the Fourth Amendment. *See City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) ("It is well established that a vehicle stop at a highway checkpoint effectuates a seizure within the meaning of the Fourth Amendment."); *State v. Sanchez*, 856 S.W.2d 166, 168 (Tex.Crim.App.1993). Because the officers seized Luxon without a warrant, the State had the burden to prove that the seizure was reasonable under the Fourth Amendment. *See Russell*, 717 S.W.2d at 9 (If the State cannot produce evidence of a warrant, the State must prove the reasonableness of the search or seizure.).

■ A roadblock seizure falls into the category of a suspicionless seizure because

it is conducted in the absence of a warrant and without probable cause or reasonable suspicion. *United States v. Martinez–Fuerte*, 428 U.S. 543, 561–62, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *Sanchez*, 856 S.W.2d at 168 n. 4; *see also* 40 George E. Dix and Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 10.70 (2d ed.2001). A suspicionless seizure is deemed reasonable under the Fourth Amendment if it meets the balancing test set forth in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). *See Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 450, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (the *Brown* balancing test applied to the determination of the reasonableness of a highway sobriety checkpoint); *see also* 40 George E. Dix and Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 10.71A (2d ed.2001). *Brown* requires balancing the public interest against the individual's right to personal security free from arbitrary interference by law enforcement officers. *Brown*, 443 U.S. at 50, 99 S.Ct. 2637.

■ In *Delaware v. Prouse*, 440 U.S. 648, 658, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the United States Supreme Court stated that "the States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration, and vehicle inspection requirements are being observed." In *Prouse*, the Supreme Court suggested that the states could develop methods for conducting spot checks for driver's licenses. 440 U.S. at 663, 99 S.Ct. 1391. The Supreme Court explained that "[q]uestioning of all oncoming traffic at roadblock-type stops is one possible alternative [to check for driver's licenses]." *Id.* However, while a roadblock stop may be a permissible way to check for driver's

licenses, "[a] central concern in balancing these competing considerations [of public interest and individual liberty] in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown*, 443 U.S. at 51, 99 S.Ct. 2637. A seizure at a roadblock stop is consistent with the Fourth Amendment if it is "carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." *Id.*

The United States Supreme Court upheld the constitutionality of a sobriety checkpoint in *Sitz* and a border patrol checkpoint in *Martinez–Fuerte*. In both *Sitz* and *Martinez–Fuerte*, the checkpoints were conducted according to departmental plans and procedures that limited the discretion of the field officers conducting the checkpoints. *See Sitz*, 496 U.S. at 447–48, 110 S.Ct. 2481; *Martinez–Fuerte*, 428 U.S. at 551–54, 96 S.Ct. 3074. However, when a checkpoint is conducted without procedures limiting the discretion of the field officers conducting the checkpoint, a serious risk of an abuse of the field officers' discretion exists. *See Sanchez*, 856 S.W.2d at 175 ("If the discretion of the officer in the field is not kept at a minimum, then abuse of that discretion will inevitably occur, and the Fourth Amendment guarantee against unreasonable searches and seizures will be undermined."); *see also Fink v. State*, 866 S.W.2d 333, 336 (Tex.App.-Houston [1st Dist.] 1993, no pet.) (Because the officers in the field operated a checkpoint on their own initiative, without supervisory approval and without departmental guidelines, "th[e] situation present[ed] a serious risk of abuse of the officers' discretion, and thereby intrude[d] greatly on appellant's fourth amendment interest in being free of arbitrary and oppressive searches and seizures."); 4 Wayne R. LaFave, *Search and Seizure: A*

*Treatise on the Fourth Amendment* § 10.8(d), at 687–88 (3d ed.1996).

In *Sanchez*, the Court of Criminal Appeals held that a seizure at a roadblock was unreasonable under the Fourth Amendment. *Sanchez*, 856 S.W.2d at 169–70. In *Sanchez*, four Department of Public Safety officers conducted a roadblock checkpoint without obtaining authorization from a superior officer. The officers stopped all northbound traffic for the purpose of questioning motorists about driver's licenses and insurance. The officers also inspected the stopped vehicles for equipment violations. The defendant arrived at the checkpoint, and after brief questioning, the officers found marihuana in the trunk of his vehicle. *Id.* at 167.

In a four-judge plurality opinion in *Sanchez*, the Court of Criminal Appeals stated that the *Brown* test requires balancing the public interest against the individual's right to personal security in light of three factors: (1) the state interest involved; (2) the level of intrusion on the individual's privacy; and (3) the effectiveness of the procedure used in achieving its stated goal. *Sanchez*, 856 S.W.2d at 168. The Court of Criminal Appeals then analyzed *Sitz* and *Martinez–Fuerte* and distinguished the checkpoints involved in those cases from the roadblock at issue in *Sanchez*. *Id.* at 168–69. In *Sanchez*, there was no evidence that the DPS officers followed standardized guidelines in operating the roadblock. *Id.* at 169. Unlike the checkpoints in *Sitz* and *Martinez–Fuerte*, the officers in *Sanchez* set up the roadblock on their own initiative and operated the roadblock "without the authorization or guidance of a superior officer and without established procedures concerning the location of the roadblock or its operation." *Id.* In *Sanchez*, the Court of Criminal Appeals also noted the absence of empirical evidence establishing the effectiveness of the sub-ject roadblock. *Id.* at 169–170. The Court of Criminal Appeals concluded:

> In the absence of evidence of authoritatively standardized procedures followed in operating the subject roadblock in order to serve its stated purpose and minimize the officers' discretion, and in the absence of testimony or empirical evidence demonstrating the effectiveness of the roadblock, we hold the court of appeals erred in concluding that the roadblock was reasonable under the Fourth Amendment.

*Id.* at 170.

In the two-judge concurring opinion in *Sanchez*, the concurring justices took issue with the plurality's conclusion that "empirical evidence demonstrating the effectiveness of the roadblock" is required to establish that a roadblock is reasonable. *Sanchez*, 856 S.W.2d at 173. Justice Campbell stated in the concurring opinion that he believed "this one part of the plurality opinion is without solid foundation." *Id.* Justice Campbell also stated that *Sitz, Prouse*, and *Martinez–Fuerte* could not reasonably be read "to *absolutely require* the government to produce statistical evidence of effectiveness with respect to any particular law enforcement technique." *Id.* However, the concurring justices agreed with the plurality's conclusion that a roadblock is unreasonable under the Fourth Amendment if the roadblock is not operated according to departmental procedures or guidelines minimizing the discretion of the officers in the field. *Id.* at 174–75. In the concurring opinion, Justice Campbell explained that, "had the checkpoint been conducted with executive-level approval and according to written, departmental guidelines, the delicate balance of competing interests *would certainly have led to a different result."* *Id.* at 175.

We note that *Sanchez* is not binding precedent because it is a plurality opinion.

*State v. Hardy,* 963 S.W.2d 516, 519 (Tex. Crim.App.1997). However, six of the justices in *Sanchez* agreed that a roadblock is unreasonable under the Fourth Amendment unless the officers conducting the roadblock followed appropriate procedures or guidelines minimizing their discretion in conducting the roadblock. Thus, a majority of the justices on the Court of Criminal Appeals agreed on this issue. *Brown, Sitz,* and *Martinez–Fuerte* provide strong support for the reasoning of the six justices in *Sanchez.* Therefore, we elect to follow the sound reasoning in *Sanchez* that, "[i]n the absence of evidence of authoritatively standardized procedures followed in operating [a roadblock] in order to serve its stated purpose and minimize the officers' discretion" the roadblock was unreasonable under the Fourth Amendment. *See Sanchez,* 856 S.W.2d at 170.

In a case decided after *Sanchez,* the Court of Criminal Appeals considered whether a sobriety checkpoint operated by a city police department was reasonable under the Fourth Amendment. *Holt v. State,* 887 S.W.2d 16 (Tex.Crim.App.1994). In *Holt,* the Court of Criminal Appeals construed *Sitz* to require "that for any DWI checkpoint program to pass constitutional muster, it must at a basic minimum be authorized by a statewide policy emanating from a politically accountable governing body." *Id.* at 19. The Court of Criminal Appeals concluded as follows:

> Because a governing body in Texas has not authorized a statewide procedure for DWI roadblocks, such roadblocks are unreasonable and unconstitutional under the Fourth Amendment of the U.S. Constitution unless and until a politically accountable governing body sees fit to enact constitutional guidelines regarding such roadblocks.

*Id.* Thus, the Court of Criminal Appeals held in *Holt* that a roadblock is unreasonable under the Fourth Amendment in the absence of a statewide policy authorizing the roadblock.

In *Schenekl v. State,* 30 S.W.3d 412 (Tex.Crim.App.2000), the Court of Criminal Appeals clarified the balancing test to be used in a Fourth Amendment analysis. Based on an analysis of United States Supreme Court cases decided after *Brown,* the Court of Criminal Appeals determined that the proper balancing test is two-pronged rather than the three-pronged test that it applied in *Sanchez* and *Holt. Schenekl,* 30 S.W.3d at 414. The Court of Criminal Appeals explained:

> In *Brown,* the Supreme Court ... indicated that the test may involve the consideration of three factors: "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." We recognized these factors and applied them to sobriety checkpoints in *State v. Sanchez* and *Holt v. State.* Since *Brown,* however, the Supreme Court has articulated the balancing test as being merely two-pronged.
>
> We believe that the proper balancing test is two-pronged, weighing the State's interest against the level of intrusion. The effectiveness of a given procedure, the advancement of the public interest, and the availability of alternative means are not separate prongs, but fall within the consideration of whether the action promotes a legitimate governmental interest. This test applies to both random stops and checkpoints.

*Id.* at 414. In *Schenekl,* the Court of Criminal Appeals neither overruled *Sanchez* or *Holt* nor stated that the results in those cases would have been different had it applied a two-pronged balancing test.

 In balancing the competing interests in this cause, we must weigh the

State's interest against the level of intrusion. *Schenekl*, 30 S.W.3d at 414. Chief Meadows testified that Officers McCullough and Garza conducted a driver's license checkpoint. *Prouse* recognized that "the States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles." *Prouse*, 440 U.S. at 658, 99 S.Ct. 1391. Chief Meadows had limited knowledge about the operation of the checkpoint. He testified that he did not know how the checkpoint was set up. While he testified that Officers McCullough and Garza told him that they were stopping every car that arrived at the checkpoint, he also testified that he did not know how many cars they stopped or how many arrests resulted from the checkpoint. Chief Meadows also did not know where Officers McCullough and Garza conducted the checkpoint. Officers McCullough and Garza did not testify at the suppression hearing. Thus, the record lacks evidence establishing the details of the checkpoint. The record also lacks evidence demonstrating the effectiveness, if any, of the checkpoint in advancing the State's interest.

In considering the level of intrusion, the roadblock in this cause was similar to the roadblock in *Sanchez*. The evidence at the suppression hearing demonstrated that Officers McCullough and Garza—the officers in the field—set up the subject roadblock on their own initiative. Officers McCullough and Garza made the decisions as to where, when, and how to operate the roadblock. They conducted the roadblock without the authorization or guidance of a supervisory officer. The evidence also showed that the roadblock was not conducted pursuant to a departmental plan of the Payne Springs Police Department and that the Payne Springs Police Department did not have any departmental procedures for the purpose of limiting the discretion of the field officers conducting the roadblock.

Thus, in this cause, the operation of the roadblock was left to the unfettered discretion of the officers in the field. Based on a lack of evidence showing the details as to how Officers McCullough and Garza conducted the roadblock, the record in this cause does not distinguish the stop of Luxon's car at the roadblock from a random stop of a car. The evidence showed that Officers McCullough and Garza did not follow any authoritatively standardized procedures in operating the roadblock. Luxon's expectation of privacy was "subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown*, 443 U.S. at 51, 99 S.Ct. 2637. Thus, the operation of the roadblock presented a serious risk of abuse of the field officers' discretion and thereby intruded greatly on Luxon's Fourth Amendment interest in being free from arbitrary and oppressive searches and seizures. *See Brown*, 443 U.S. at 51, 99 S.Ct. 2637; *Sanchez*, 856 S.W.2d at 174; *Fink*, 866 S.W.2d at 336. As such, we find that the level of intrusion on Luxon's privacy interest outweighed the State's interest. *See Brown*, 443 U.S. at 51, 99 S.Ct. 2637. Therefore, the seizure of Luxon at the roadblock was unreasonable under the Fourth Amendment. *See Sanchez*, 856 S.W.2d at 170; *see also Enax v. State*, 877 S.W.2d 548 (Tex.App.-Beaumont 1994, no pet.); *Fink*, 866 S.W.2d at 336. Additionally, the roadblock was unreasonable under the Fourth Amendment because there was no evidence that a governing body in Texas had authorized a statewide procedure for conducting such roadblocks. *Holt*, 887 S.W.2d at 19.

The State concedes in its brief that the seizure of Luxon was unreasonable under the reasoning of *Sanchez*. The Court of Criminal Appeals decided *Sanchez* in 1993. The State argues in its brief that the legislature invalidated the holding in *Sanchez*

when it enacted Section 521.025 of the Texas Transportation Code in 1995. *See* TEX. TRANSP. CODE ANN. § 521.025 (Vernon 2007). Section 521.025(b) of the Transportation Code provides that "[a] peace officer may stop and detain a person operating a motor vehicle to determine if the person has a driver's license as required by this section." By enacting the Transportation Code, the legislature recodified existing statutes without substantive changes to the law. *See* TEX. TRANSP. CODE ANN. § 1.001 (Vernon 1999). The recodification took place "as a part of the state's continuing statutory revision program." Section 1.001(a). Section 521.025 recodified former TEX.REV.CIV. STAT. art. 6687b, § 13 (1977). *See* Act of May 29, 1983, 68th Leg., R.S., ch. 345, 1983 Tex. Gen. Laws 1793, 1816–17, *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1545. Former Article 6687b, section 13 provided that "[a]ny peace officer may stop and detain any motor vehicle operator for the purpose of determining whether such person has a driver's license as required by this Section."

Section 521.025(b) of the Transportation Code was merely a recodification of prior law without substantive change. Nothing in Section 521.025(b) of the Transportation Code indicates that the legislature enacted it in response to *Sanchez* or that the legislature disagreed with the holding in *San-*

chez. Additionally, although the Court of Criminal Appeals did not specifically address former Article 6687b, section 13 in *Sanchez*, the holding in *Sanchez* certainly affected the subject matter of Article 6687b, section 13—stopping a motor vehicle operator for the purpose of determining whether the operator had a driver's license. In statutory construction, "it is presumed that the legislature is aware of case law affecting or relating to the statute." *Miller v. State*, 33 S.W.3d 257, 260 (Tex.Crim.App.2000). The legislature could have specifically addressed *Sanchez* in Section 521.025 of the Transportation Code. Instead, it enacted Section 521.025 of the Transportation Code without material change to former Article 6687b, section 13. The language in Section 521.025 does not indicate that the legislature considered *Sanchez* in any way in enacting Section 521.025. Therefore, the language in Section 521.025 provides no support for the State's claim that the legislature intended to invalidate the holding in *Sanchez*.

Even if the legislature had intended to invalidate the *Sanchez* holding in enacting Section 521.025 of the Transportation Code, the roadblock would have been subject to a Fourth Amendment analysis.[1] As explained above, based on the principles stated in *Brown, Sitz, Martinez–Fuerte*, and *Holt*, the seizure of Luxon at the

---

1. We note that the courts construed former Article 6687b, section 13 in light of Fourth Amendment principles set forth in United States Supreme Court cases. *See Webb v. State*, 739 S.W.2d 802 (Tex.Crim.App.1987) (The Court of Criminal Appeals examined the State's claim that Article 6687b, section 13 authorized a checkpoint under Fourth Amendment principles set forth in *Brown, Prouse, Martinez–Fuerte*, and other cases.); *Meeks v. State*, 692 S.W.2d 504, 507–08 (Tex. Crim.App.1985) ("The continued viability of [former Article 6687b, section 13] is in question in light of the decision of the United

States Supreme Court in [*Prouse*].''); *Koonce v. State*, 651 S.W.2d 46, 47–48 (Tex.App.-Dallas 1983, no pet.) (Because the State failed to present evidence demonstrating that the warrantless search was reasonable under the guidelines set forth in *Prouse*, the court did not reach the constitutional issue of whether [former Article 6687b, section 13] per se violated the Fourth Amendment.). These cases demonstrated that a search or seizure conducted pursuant to former Article 6687b, section 13 was reasonable only if the search or seizure complied with the requirements of the Fourth Amendment.

subject roadblock failed to satisfy the Fourth Amendment's reasonableness requirement. Thus, the seizure of Luxon was unreasonable whether or not the legislature intended to invalidate the holding in *Sanchez.*

In *Schenekl,* the Court of Criminal Appeals addressed the constitutionality of Section 31.124 of the Texas Parks and Wildlife Code. *See* TEX. PARKS & WILD.CODE ANN. § 31.124 (Vernon 2002). Section 31.124 is included in Chapter 31 of the Parks and Wildlife Code, which is entitled the Water Safety Act. *See* TEX. PARKS & WILD.CODE ANN. § 31.001 (Vernon 2002). The Water Safety Act requires boats to carry a certificate of number and various safety devices. *See Schenekl,* 30 S.W.3d at 415. Section 31.124(a) provides that, "[i]n order to enforce the provisions of [the Water Safety Act], an enforcement officer may stop and board any vessel subject to [the Water Safety Act] and may inspect the boat to determine compliance with applicable provisions." Thus, Section 31.124(a) authorizes enforcement officers to stop and board boats, without probable cause or reasonable suspicion, for the purpose of performing a water safety check. *See Schenekl,* 30 S.W.3d at 413, 416.

In *Schenekl,* the Court of Criminal Appeals applied the two-pronged balancing test, weighing the State's interest against the level of intrusion. The State has an important interest in promoting recreational water safety. *Schenekl,* 30 S.W.3d at 416. Random boat stops for the purposes of conducting safety checks are necessary to promote the State's interest because, "unlike cars on highways, boat checkpoints are impractical because there are no established avenues of transport on the water." *Id.* at 415. In determining that the level of intrusion involved in a random boat stop under Section 31.124(a) is minimal, the Court of Criminal Appeals

distinguished boat stops from automobile stops:

> *Prouse* is distinguishable from our case in two important respects. First, as previously discussed, there are not effective alternative mechanisms available for enforcing boating regulations. Second, in *Prouse,* the Court noted that automobile travel is a basic, pervasive, often necessary means of transportation in our society. As such, there is a heightened expectation of privacy while in a car as compared to a boat. Boating is not basic, pervasive, or generally necessary, as is motor vehicle transportation. It is more commonly associated with recreation than necessity.

*Id.* at 416. Balancing the State's interest with the minimal level of intrusion on the individual's rights, the Court of Criminal Appeals concluded that Section 31.124 was constitutional. *Id.*

As explained in detail in *Schenekl,* automobile stops are distinguishable from boat stops. Therefore, this cause is distinguishable from *Schenekl.* In this cause, Luxon had the "heightened expectation of privacy while in a car as compared to a boat." For the reasons stated above, the operation of the roadblock at the unfettered discretion of Officers McCullough and Garza involved a substantial intrusion on Luxon's expectation of privacy.

The trial court did not abuse its discretion in granting Luxon's motion to suppress. We overrule the State's issue.

### *This Court's Ruling*

We affirm the judgment of the trial court.