Opinion filed July 12, 2007




















 
 
  
 
 







 
 
  
 
 




Opinion filed July 12, 2007

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00097-CR

                                                    __________

 

                                       STATE OF TEXAS,
Appellant

 

                                                             V.

 

                                  RYAN
WILLIAM LUXON, Appellee

 



 

                                  On
Appeal from the County Court at Law No. 2

 

                                                     Henderson County, Texas

 

                                            Trial
Court Cause No. 2005-1578CL2

 



 

                                                                   O
P I N I O N








Ryan William Luxon was charged with the
misdemeanor offense of driving while intoxicated.  In a motion to suppress, Luxon claimed that
he was arrested as the result of an illegal stop and seizure at a roadblock set
up by police officers.  Luxon asserted
that the roadblock violated his rights under the Fourth Amendment to the United
States Constitution and Article I, section 9 of the Texas Constitution.  The trial court granted Luxon=s motion.  In a sole appellate issue, the State
complains that the trial court erred in granting Luxon=s
motion to suppress.  Because the State
failed to meet its burden to prove that the warrantless seizure of Luxon was
reasonable under the Fourth Amendment, we affirm the judgment of the trial
court.

                                                    Evidence
at Suppression Hearing

On August 13, 2005, Shawn McCullough and Ricardo
Garza were patrol officers for the Payne Springs Police Department.  On that day, Officers McCullough and Garza
conducted a driver=s license
checkpoint.  Officers McCullough and
Garza were not employed by the Payne Springs Police Department at the time of
the suppression hearing, and they did not testify at the hearing.  Instead, the State presented testimony from
Payne Springs Police Chief Tim Meadows. 
Chief Meadows testified that he was a sergeant for the Payne Springs
Police Department when Officers McCullough and Garza conducted the subject
checkpoint.  He also testified that he
had no personal knowledge regarding the checkpoint and that he learned about the
checkpoint from Officers McCullough and Garza after they conducted it.

Thus, Chief Meadows=s
testimony about the checkpoint was based on information that he received from
Officers McCullough and Garza.  With
respect to the operation of the checkpoint, Chief Meadows testified that
Officers McCullough and Garza told him that they were checking driver=s licenses at the checkpoint and that
they were stopping every car that arrived at the checkpoint.  Chief Meadows=s
testimony indicated that Officer McCullough stopped Luxon=s vehicle during the operation of the
checkpoint.  The State introduced into
evidence Officer McCullough=s
offense report relating to the arrest of Luxon. 
The report indicated that Officer McCullough approached Luxon=s vehicle at about 10:30 p.m. while
Officer McCullough was conducting a driver=s
license check at the intersection of Double
 Bridge Road and Frazier Lane
.  The report also indicated that Officer
McCullough arrested Luxon for driving while intoxicated after speaking with
Luxon and smelling an odor of alcohol coming from within Luxon=s vehicle.








            Chief Meadows testified that he did not give Officers
McCullough and Garza permission to operate the driver=s
license checkpoint.  Chief Meadows said
that Officers McCullough and Garza had previously asked him whether they could
run a driver=s license
checkpoint.  At that time, Chief Meadows
believed that driver=s
license checkpoints were illegal, and he testified that he told Officers
McCullough and Garza that he would have to check with Wade Norris, the police
chief at the time, about their request to operate a checkpoint.  Chief Meadows testified that he had not
checked into their request when they conducted the checkpoint.  He also testified that, as far as he knew,
Chief Norris did not give Officers McCullough and Garza permission to conduct
the checkpoint.  Rather, Chief Meadows
said that Officers McCullough and Garza made the decision to operate the
checkpoint on their own, based on the approval of Officer Garza, who was the
senior patrol officer. However, Chief Meadows explained that the operation of
the checkpoint was not an appropriate exercise of Officer Garza=s authority.

Chief Meadows also testified that he did not know
how the checkpoint was set up or where Officers McCullough and Garza conducted
the checkpoint.  Chief Meadows believed
that Officers McCullough and Garza set up the checkpoint on County Road 2516, but he said that the
checkpoint could have been set up at any one of the three intersections located
on County Road
2516 in Payne Springs.  Chief Meadows
also testified that he did not know how many people Officers McCullough and
Garza stopped during the operation of the checkpoint.  While Chief Meadows believed that Officers
McCullough and Garza caught some people driving without licenses, he testified
that he did not know how many arrests resulted from the checkpoint.  Chief Meadows said that he had no statistical
information relating to the effectiveness of the checkpoint and that he could
not provide any kind of empirical evidence as to whether the checkpoint worked.

Chief Meadows also testified that the Payne
Springs Police Department did not normally conduct driver=s license checkpoints.  He also said that the Payne Springs Police
Department did not have any standardized procedures for conducting checkpoints.

                                                           The
Trial Court=s Ruling








The trial court entered findings of fact and
conclusions of law in support of its order granting Luxon=s motion to suppress.  In summary, the trial court found that Luxon=s vehicle was stopped pursuant to the
subject driver=s license
roadblock, that the Payne Springs Police Department did not have any
standardized procedures for conducting driver=s
license roadblocks, and that the State did not present any testimony or
empirical evidence demonstrating the effectiveness of the subject roadblock.  The trial court concluded (1) that there was
no evidence Officer McCullough followed authoritatively standardized procedures
in operating the roadblock in order to serve the roadblock=s stated purpose and to minimize the
officers=
discretion in operating the roadblock and (2) that there was no testimony or
empirical evidence demonstrating the effectiveness of the roadblock.  Based on the absence of such evidence, the
trial court concluded that the roadblock was illegal.     

                                                              Standard
of Review

We
review a trial court=s ruling on a motion to suppress evidence
for an abuse of discretion.  Balentine
v. State, 71 S.W.3d 763, 768 (Tex.
Crim. App. 2002).  In reviewing a trial
court=s ruling 
on a motion to suppress raising a Fourth Amendment claim, appellate
courts must give great deference to the trial court=s determination of historical facts while
reviewing the trial court=s application of  Fourth Amendment search and seizure law de
novo.  Torres v. State, 182 S.W.3d
899, 902 (Tex. Crim. App. 2005); Carmouche
v. State, 10 S.W.3d 323, 327 (Tex.
Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  An appellate court must view the
evidence in the light most favorable to the trial court=s ruling. 
State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When, as here, a trial court makes explicit
fact findings, the appellate court determines whether the evidence, when viewed
in the light most favorable to the trial court=s
ruling, supports those fact findings.  Id.  We also give deference to the trial court=s rulings on mixed questions of law and
fact when those rulings turn on an evaluation of credibility and demeanor.  Guzman, 955 S.W.2d at 89.  Where such rulings do not turn on an
evaluation of credibility and demeanor, we review the trial court=s actions de novo.  Id.;
Myers v. State, 203 S.W.3d 873, 879 (Tex. App.CEastland
2006, pet. ref=d).

The initial burden of proof on a motion to
suppress evidence on the basis of a Fourth Amendment violation rests with the
defendant.  Torres, 182 S.W.3d at
902; Russell v. State, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986).  The defendant meets this burden by
demonstrating that the search or seizure occurred without a warrant.  Torres, 182 S.W.3d at 902; Russell,
717 S.W.2d at 9.  Thereafter, the burden
shifts to the State to prove the reasonableness of the warrantless search.  Torres, 182 S.W.3d at 902; Russell,
717 S.W.2d at 9-10.

                                               Constitutionality
of Subject Roadblock 








The evidence at the suppression hearing showed
that Officers McCullough and Garza stopped Luxon=s
vehicle at the subject roadblock.  By
stopping Luxon=s vehicle
at the roadblock, the officers effectuated a seizure of Luxon within the
meaning of the Fourth Amendment.  See
City of Indianapolis v. Edmond, 531 U.S. 32 (2000) (AIt
is well established that a vehicle stop at a highway checkpoint effectuates a
seizure within the meaning of the Fourth Amendment.@);
State v. Sanchez, 856 S.W.2d 166, 168 (Tex. Crim. App. 1993).  Because the officers seized Luxon without a
warrant, the State had the burden to prove that the seizure was reasonable
under the Fourth Amendment.  See Russell,
717 S.W.2d at 9) (If the State cannot produce evidence of a warrant, the State
must prove the reasonableness of the search or seizure.).

A roadblock seizure falls into the category of a
suspicionless seizure because it is conducted in the absence of a warrant and
without probable cause or reasonable suspicion. 
United States v. Martinez-Fuerte, 428 U.S. 543, 561-62 (1976); Sanchez,
856 S.W.2d at 168 n.4; see also 40 George E. Dix and Robert O. Dawson, Texas
Practice: Criminal Practice and Procedure '
10.70 (2d ed. 2001).  A suspicionless
seizure is deemed reasonable under the Fourth Amendment if it meets the
balancing test set forth in Brown v. Texas, 443 U.S. 47 (1979).  See Mich.
Dep=t of
State Police v. Sitz, 496 U.S.
444, 450 (1990) (the Brown balancing test applied to the determination
of the reasonableness of a highway sobriety checkpoint); see also 40
George E. Dix and Robert O. Dawson, Texas Practice:  Criminal Practice and Procedure ' 10.71A (2d ed. 2001).  Brown requires balancing the public
interest against the individual=s
right to personal security free from arbitrary interference by law enforcement
officers.  Brown, 443 U.S. at 50.

In Delaware v. Prouse, 440 U.S. 648, 658
(1979), the United States Supreme Court stated that Athe
States have a vital interest in ensuring that only those qualified to do so are
permitted to operate motor vehicles, that these vehicles are fit for safe
operation, and hence that licensing, registration, and vehicle inspection
requirements are being observed.@  In Prouse, the Supreme Court suggested
that the states could develop methods for conducting spot checks for driver=s licenses.  440 U.S. at 663.  The Supreme Court explained that A[q]uestioning of all oncoming traffic at
roadblock-type stops is one possible alternative [to check for driver=s licenses].@  Id.  However, while a roadblock stop may be a
permissible way to check for driver=s
licenses, A[a]
central concern in balancing these competing considerations [of public interest
and individual liberty] in a variety of settings has been to assure that an
individual=s
reasonable expectation of privacy is not subject to arbitrary invasions solely
at the unfettered discretion of officers in the field.@  Brown, 443 U.S. at 51.  A seizure at a roadblock stop is consistent
with the Fourth Amendment if it is Acarried
out pursuant to a plan embodying explicit, neutral limitations on the conduct
of individual officers.@  Id.








The United States Supreme Court upheld the
constitutionality of a sobriety checkpoint in Sitz and a border patrol
checkpoint in Martinez-Fuerte.  In
both Sitz and Martinez-Fuerte, the checkpoints were conducted
according to departmental plans and procedures that limited the discretion of
the field officers conducting the checkpoints. 
See Sitz, 496 U.S.
at 447-48; Martinez-Fuerte, 428 U.S. at 551-54.  However, when a checkpoint is conducted
without procedures limiting the discretion of the field officers conducting the
checkpoint, a serious risk of an abuse of the field officers= discretion exists.  See Sanchez, 856 S.W.2d at 175 (AIf the discretion of the officer in the
field is not kept at a minimum, then abuse of that discretion will inevitably
occur, and the Fourth Amendment guarantee against unreasonable searches and
seizures will be undermined.@);
see also Fink v. State, 866 S.W.2d 333, 336 (Tex. App.CHouston [1st Dist.] 1993, no pet.)
(Because the officers in the field operated a checkpoint on their own
initiative, without supervisory approval and without departmental guidelines, Ath[e] situation present[ed] a serious
risk of abuse of the officers=
discretion, and thereby intrude[d] greatly on appellant=s
fourth amendment interest in being free of arbitrary and oppressive searches
and seizures.@); 4
Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment ' 10.8(d), at 687-88 (3d ed. 1996).

In Sanchez, the Court of Criminal Appeals
held that a seizure at a roadblock was unreasonable under the Fourth
Amendment.  Sanchez, 856 S.W.2d at
169-70.  In Sanchez, four
Department of Public Safety officers conducted a roadblock checkpoint without
obtaining authorization from a superior officer.  The officers stopped all northbound traffic
for the purpose of questioning motorists about driver=s
licenses and insurance.  The officers
also inspected the stopped vehicles for equipment violations.  The defendant arrived at the checkpoint, and
after brief questioning, the officers found marihuana in the trunk of his
vehicle.  Id. at 167.








In a four-judge plurality opinion in Sanchez,
the Court of Criminal Appeals stated that the Brown test requires
balancing the public interest against the individual=s
right to personal security in light of three factors: (1) the state interest
involved; (2) the level of intrusion on the individual=s
privacy; and (3) the effectiveness of the procedure used in achieving its
stated goal.  Sanchez, 856 S.W.2d
at 168.  The Court of Criminal Appeals
then analyzed Sitz and Martinez-Fuerte and distinguished the
checkpoints involved in those cases from the roadblock at issue in Sanchez.  Id.
at 168-69.  In Sanchez, there was
no evidence that the DPS officers followed standardized guidelines in operating
the roadblock.  Id. at 169.  Unlike the checkpoints in Sitz and Martinez-Fuerte,
the officers in Sanchez set up the roadblock on their own initiative and
operated the roadblock Awithout
the authorization or guidance of a superior officer and without established
procedures concerning the location of the roadblock or its operation.@ 
Id.  In Sanchez, the Court of Criminal
Appeals also noted the absence of empirical evidence establishing the
effectiveness of the subject roadblock.  Id. at
169-170.  The Court of Criminal Appeals
concluded:

In the absence of evidence of authoritatively
standardized procedures followed in operating the subject roadblock in order to
serve its stated purpose and minimize the officers=
discretion, and in the absence of testimony or empirical evidence demonstrating
the effectiveness of the roadblock, we hold the court of appeals erred in
concluding that the roadblock was reasonable under the Fourth Amendment.

 

Id.
at 170.

In the two-judge concurring opinion in Sanchez,
the concurring justices took issue with the plurality=s
conclusion that Aempirical
evidence demonstrating the effectiveness of the roadblock@ is required to establish that a
roadblock is reasonable.  Sanchez,
856 S.W.2d at 173.  Justice Campbell
stated in the concurring opinion that he believed Athis
one part of the plurality opinion is without solid foundation.@ 
Id.  Justice Campbell also stated that Sitz,
Prouse, and Martinez-Fuerte could not reasonably be read Ato absolutely require the
government to produce statistical evidence of effectiveness with respect to any
particular law enforcement technique.@  Id.  However, the concurring justices agreed with
the plurality=s
conclusion that a roadblock is unreasonable under the Fourth Amendment if the
roadblock is not operated according to departmental procedures or guidelines
minimizing the discretion of the officers in the field.  Id.
at 174-75.  In the concurring opinion,
Justice Campbell explained that, Ahad
the checkpoint been conducted with executive-level approval and according to
written, departmental guidelines, the delicate balance of competing interests would
certainly have led to a different result.@  Id.
at 175.








We note that Sanchez is not binding
precedent because it is a plurality opinion. 
State v. Hardy, 963 S.W.2d 516, 519 (Tex. Crim. App. 1997).  However, six of the justices in Sanchez
agreed that a roadblock is unreasonable under the Fourth Amendment unless the
officers conducting the roadblock followed appropriate procedures or guidelines
minimizing their discretion in conducting the roadblock.  Thus, a majority of the justices on
the Court of Criminal Appeals agreed on this issue.  Brown, Sitz, and Martinez-Fuerte
provide strong support for the reasoning of the six justices in Sanchez.  Therefore, we elect to follow the sound
reasoning in Sanchez that, A[i]n
the absence of evidence of authoritatively standardized procedures followed in
operating [a roadblock] in order to serve its stated purpose and minimize the
officers=
discretion@ the
roadblock was unreasonable under the Fourth Amendment.  See Sanchez, 856 S.W.2d at 170.

In a case decided after Sanchez, the Court
of Criminal Appeals considered whether a sobriety checkpoint operated by a city
police department was reasonable under the Fourth Amendment.  Holt v. State, 887 S.W.2d 16 (Tex.
Crim. App. 1994).  In Holt, the
Court of Criminal Appeals construed Sitz to require Athat for any DWI checkpoint program to
pass constitutional muster, it must at a basic minimum be authorized by a
statewide policy emanating from a politically accountable governing body.@ 
Id.
at 19.  The Court of Criminal Appeals
concluded as follows:

Because a governing body in Texas has not
authorized a statewide procedure for DWI roadblocks, such roadblocks are
unreasonable and unconstitutional under the Fourth Amendment of the U.S.
Constitution unless and until a politically accountable governing body sees fit
to enact constitutional guidelines regarding such roadblocks.

 

Id.  Thus, the Court of Criminal Appeals held in Holt
that a roadblock is unreasonable under the Fourth Amendment in the absence of a
statewide policy authorizing the roadblock.

In Schenekl v. State, 30 S.W.3d 412 (Tex.
Crim. App. 2000), the Court of Criminal Appeals clarified the balancing test to
be used in a Fourth Amendment analysis. 
Based on an analysis of United States Supreme Court cases decided after Brown,
the Court of Criminal Appeals determined that the proper balancing test is
two-pronged rather than the three-pronged test that it applied in Sanchez
and Holt.  Schenekl, 30
S.W.3d at 414.  The Court of Criminal
Appeals explained:

In
Brown, the Supreme Court . . . indicated that the test may involve the
consideration of three factors: Athe
gravity of the public concerns served by the seizure, the degree to which the
seizure advances the public interest, and the severity of the interference with
individual liberty.@  We recognized these factors and applied them
to sobriety checkpoints in State v. Sanchez and Holt v. State.  Since Brown, however, the Supreme
Court has articulated the balancing test as being merely two-pronged.

 








We believe that the proper balancing test is
two-pronged, weighing the State=s
interest against the level of intrusion. 
The effectiveness of a given procedure, the advancement of the public
interest, and the availability of alternative means are not separate prongs,
but fall within the consideration of whether the action promotes a legitimate
governmental interest.  This test applies
to both random stops and checkpoints.                            

                     

Id.
at 414.  In Schenekl, the Court of
Criminal Appeals neither overruled Sanchez or Holt nor stated
that the results in those cases would have been different had it applied a
two-pronged balancing test. 

            In balancing the
competing interests in this cause, we must weigh the State=s interest against the level of
intrusion.  Schenekl, 30 S.W.3d at
414.  Chief Meadows testified that
Officers McCullough and Garza conducted a driver=s
license checkpoint.  Prouse
recognized that Athe
States have a vital interest in ensuring that only those qualified to do so are
permitted to operate motor vehicles.@  Prouse, 440 U.S. at 658.  Chief Meadows had limited knowledge about the
operation of the checkpoint.  He
testified that he did not know how the checkpoint was set up.  While he testified that Officers McCullough
and Garza told him that they were stopping every car that arrived at the
checkpoint, he also testified that he did not know how many cars they stopped
or how many arrests resulted from the checkpoint.  Chief Meadows also did not know where
Officers McCullough and Garza conducted the checkpoint.  Officers McCullough and Garza did not testify
at the suppression hearing.  Thus, the
record lacks evidence establishing the details of the checkpoint.  The record also lacks evidence demonstrating
the effectiveness, if any, of the checkpoint in advancing the State=s interest.

In considering the level of intrusion, the
roadblock in this cause was similar to the roadblock in Sanchez.  The evidence at the suppression hearing
demonstrated that Officers McCullough and Garza B
the officers in the field B
set up the subject roadblock on their own initiative.  Officers McCullough and Garza made the
decisions as to where, when, and how to operate the roadblock.  They conducted the roadblock without the
authorization or guidance of a supervisory officer.  The evidence also showed that the roadblock
was not conducted pursuant to a departmental plan of the Payne Springs Police
Department and that the Payne Springs Police Department did not have any
departmental procedures for the purpose of limiting the discretion of the field
officers conducting the roadblock.








Thus, in this cause, the operation of the
roadblock was left to the unfettered discretion of the officers in the
field.  Based on a lack of evidence
showing the details as to how Officers McCullough and Garza conducted the
roadblock, the record in this cause does not distinguish the stop of Luxon=s car at the roadblock from a random
stop of a car.  The evidence showed that
Officers McCullough and Garza did not follow any authoritatively standardized
procedures in operating the roadblock. 
Luxon=s
expectation of privacy was Asubject
to arbitrary invasions solely at the unfettered discretion of officers in the
field.@  Brown, 443 U.S. at 51.  Thus, the operation of the roadblock
presented a serious risk of abuse of the field officers=
discretion and thereby intruded greatly on Luxon=s
Fourth Amendment interest in being free from arbitrary and oppressive searches
and seizures.  See Brown,
443 U.S.
at 51; Sanchez, 856 S.W.2d at 174; Fink, 866 S.W.2d at 336.   As such, we find that the level of intrusion
on Luxon=s privacy
interest outweighed the State=s
interest.  See Brown,  443 U.S. at 51.  Therefore, the seizure of Luxon at the
roadblock was unreasonable under the Fourth Amendment.  See Sanchez, 856 S.W.2d at 170; see
also Enax v. State, 877 S.W.2d 548 (Tex. App.CBeaumont
1994, no pet.); Fink, 866 S.W.2d at 336. 
Additionally, the roadblock was unreasonable under the Fourth Amendment
because there was no evidence that a governing body in Texas had authorized a statewide procedure
for conducting such roadblocks.  Holt,
887 S.W.2d at 19.








The State concedes in its brief that the seizure
of Luxon was unreasonable under the reasoning of Sanchez.  The Court of Criminal Appeals decided Sanchez
in 1993.  The State argues in its brief
that the legislature invalidated the holding in Sanchez when it enacted
Section 521.025 of the Texas Transportation Code in 1995.  See Tex.
Transp. Code Ann. '
521.025 (Vernon 2007). Section 521.025(b) of the Transportation Code provides
that A[a] peace
officer may stop and detain a person operating a motor vehicle to determine if
the person has a driver=s
license as required by this section.@  By enacting the Transportation Code, the
legislature recodified existing statutes without substantive changes to the
law.  See Tex. Transp. Code Ann. ' 1.001 (Vernon 1999). 
The recodification took place Aas
a part of the state=s
continuing statutory revision program.@  Section 1.001(a).  Section 521.025 recodified former Tex. Rev. Civ. Stat. art. 6687b, ' 13 (1977).  See Act of May 29, 1983, 68th Leg.,
R.S., ch. 345, 1983 Tex. Gen. Laws 1793, 1816-17, repealed by Act of May
1, 1995, 74th Leg., R.S., ch. 165, '
1, 1995 Tex. Gen. Laws 1025, 1545. 
Former Article 6687b, section 13 provided that A[a]ny
peace officer may stop and detain any motor vehicle operator for the purpose of
determining whether such person has a driver=s
license as required by this Section.@

Section 521.025(b) of the Transportation Code was
merely a recodification of prior law without substantive change.  Nothing in Section 521.025(b) of the
Transportation Code indicates that the legislature enacted it in response to Sanchez
or that the legislature disagreed with the holding in Sanchez.  Additionally, although the Court of Criminal
Appeals did not specifically address former Article 6687b, section 13 in Sanchez,
the holding in Sanchez certainly affected the subject matter of Article
6687b, section 13 B stopping
a motor vehicle operator for the purpose of determining whether the operator
had a driver=s
license.  In statutory construction, Ait is presumed that the legislature is
aware of case law affecting or relating to the statute.@  Miller v. State, 33 S.W.3d 257, 260 (Tex. Crim. App.
2000).  The legislature could have
specifically addressed Sanchez in Section 521.025 of the Transportation
Code.  Instead, it enacted Section
521.025 of the Transportation Code without material change to former Article
6687b, section 13.  The language in
Section 521.025 does not indicate that the legislature considered Sanchez
in any way in enacting Section 521.025. 
Therefore, the language in Section 521.025 provides no support for the
State=s claim
that the legislature intended to invalidate the holding in Sanchez.

Even if the legislature had intended to invalidate
the Sanchez holding in enacting Section 521.025 of the Transportation
Code, the roadblock would have been subject to a Fourth Amendment analysis.[1]  As explained above, based on the principles
stated in Brown, Sitz, Martinez-Fuerte, and Holt,
the seizure of Luxon at the subject
roadblock failed to satisfy the Fourth Amendment=s
reasonableness requirement.  Thus, the
seizure of Luxon was unreasonable whether or not the legislature intended to
invalidate the holding in Sanchez.








In Schenekl, the Court of Criminal Appeals
addressed the constitutionality of Section 31.124 of the Texas Parks
and Wildlife Code.  See Tex. Parks & Wild. Code Ann. ' 31.124 (Vernon 2002).  Section 31.124 is included in Chapter 31 of
the Parks and Wildlife Code, which is entitled the Water Safety Act.  See Tex.
Parks & Wild. Code Ann. ' 31.001 (Vernon 2002).  The Water
Safety Act requires boats to carry a certificate of number and various safety
devices.  See Schenekl, 30 S.W.3d
at 415.  Section 31.124(a) provides that,
A[i]n order to enforce the provisions of
[the Water Safety Act], an enforcement officer may stop and board any vessel
subject to [the Water Safety Act] and may inspect the boat to determine
compliance with applicable provisions.@  Thus, Section 31.124(a) authorizes
enforcement officers to stop and board boats, without probable cause or
reasonable suspicion, for the purpose of performing a water safety check.  See Schenekl, 30 S.W.3d at 413, 416.

In Schenekl, the Court of Criminal Appeals
applied the two-pronged balancing test, weighing the State=s interest against the level of
intrusion.  The State has an important
interest in promoting recreational water safety.  Schenekl, 30 S.W.3d at 416.  Random boat stops for the purposes of
conducting safety checks are necessary to promote the State=s interest because, Aunlike cars on highways, boat
checkpoints are impractical because there are no established avenues of
transport on the water.@  Id.
at 415.  In determining that the level of
intrusion involved in a random boat stop under Section 31.124(a) is minimal,
the Court of Criminal Appeals distinguished boat stops from automobile stops:

Prouse is distinguishable from our case in
two important respects. First, as previously discussed, there are not effective
alternative mechanisms available for enforcing boating regulations.  Second, in Prouse, the Court noted
that automobile travel is a basic, pervasive, often necessary means of
transportation in our society.  As such,
there is a heightened expectation of privacy while in a car as compared to a
boat.  Boating is not basic, pervasive,
or generally necessary, as is motor vehicle transportation.  It is more commonly associated with
recreation than necessity.                              

Id.
at 416.  Balancing the State=s interest with the minimal level of
intrusion on the individual=s
rights, the Court of Criminal Appeals concluded that Section 31.124 was
constitutional.  Id. 








As explained in detail in Schenekl,
automobile stops are distinguishable from boat stops.  Therefore, this cause is distinguishable from
Schenekl.  In this cause, Luxon
had the Aheightened
expectation of privacy while in a car as compared to a boat.@ 
For the reasons stated above, the operation of the roadblock at the
unfettered discretion of Officers McCullough and Garza involved a substantial
intrusion on Luxon=s
expectation of privacy.

The trial court did not abuse its discretion in
granting Luxon=s motion
to suppress.  We overrule the State=s issue.

                                                               This
Court=s Ruling

We affirm the judgment of the trial court.

 

 

TERRY McCALL

JUSTICE

 

July 12, 2007

Publish.  See Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











[1]We note that the courts construed former Article 6687b,
section 13 in light of Fourth
Amendment principles set forth in United States Supreme Court cases.  See Webb v. State, 739 S.W.2d 802
(Tex. Crim. App. 1987) (The Court of Criminal Appeals examined the State=s claim that Article 6687b, section
13 authorized a checkpoint under Fourth Amendment principles set forth in Brown,
Prouse, Martinez-Fuerte, and other cases.); Meeks v. State,
692 S.W.2d 504, 507-08 (Tex. Crim. App. 1985) (AThe continued viability of [former
Article 6687b, section 13] is in question in light of the decision of the
United States Supreme Court in [Prouse].@); Koonce v. State, 651
S.W.2d 46, 47-48 (Tex. App.C Dallas 1983, no pet.) (Because the State failed to present
evidence demonstrating that the warrantless search was reasonable under the
guidelines set forth in Prouse, the court did not reach the
constitutional issue of whether [former Article 6687b, section 13] per se
violated the Fourth Amendment.).  These
cases demonstrated that a search or seizure conducted pursuant to former
Article 6687b, section 13 was reasonable only if the search or seizure complied
with the requirements of the Fourth Amendment.